[No. 12329. Department One. May 27, 1915.]

F. M. Taylor *et al.*, *Appellants*, v. Chicago, Milwaukee & St. Paul Railway Company, *Respondent*.[1]

Railroads—Operation—Damages to Property—Liability—Damnum Absque Injuria. The jarring of buildings, the casting of smoke, sparks and soot on premises, and the emission of gases and fumes, necessarily incident to the ordinary operation of a railroad through a city, which results in depreciating the value of neighboring property is *damnum absque injuria*, in the absence of negligence on the part of the railway company.

Eminent Domain—Right to Compensation—Damnum Absque Injuria. The constitutional guaranty (Const., art. 1, § 16) that no private property shall be taken or damaged without just compensation is applicable to injuries arising from the commission of some actionable wrong, and does not authorize compensation for depreciation in value caused by a legal act which is in law *damnum absque injuria*.

[1]Reported in 148 Pac. 887.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered May 4, 1914, in favor of the defendant, upon the pleadings, dismissing an action for damages to property, by the construction and operation of a railroad. Affirmed.

*Nuzum, Clark & Nuzum* (*Geo. H. Armitage*, of counsel), for appellants.

*F. M. Dudley, G. W. Korte*, and *F. M. Barkwill*, for respondent.

PARKER, J.—The plaintiffs commenced this action in the superior court for Spokane county, seeking recovery of damages which they claim result to their property situated in the city of Spokane from the "ordinary operation" of the defendant's line of railway in close proximity thereto. The cause was disposed of in favor of the defendant by judgment of dismissal rendered in the superior court upon motion for judgment upon the pleadings. From this disposition of the cause, the plaintiffs have appealed to this court.

The cause comes to us presenting the same questions as if demurrer to appellants' complaint for want of facts therein alleged constituting a cause of action had been sustained by the trial court and appellants had elected to stand upon their complaint and declined to plead further. No contention is made that by this manner of disposition of the cause appellants were deprived of opportunity to amend their complaint. The question then is, Does the complaint state facts constituting a cause of action against respondent? The controlling facts, as disclosed by the allegations of the complaint, may be summarized as follows:

Respondent is a common carrier, owning and operating lines of steam railways in the state of Washington and the northwestern states, one of which lines runs through the city of Spokane past the property of appellants. Appellants' property claimed to be damaged is at its nearest point

to the track of respondent's railway approximately sixty feet therefrom. The cause, nature and extent of appellants' claimed damage is alleged in their complaint to be as follows:

"That in the ordinary operation of said road the said defendants use large and heavy engines and trains of cars, the motor power of said engines being steam, said steam being generated by the use of coal, and that in the operation of said road the said engines of the said defendants emit large volumes of smoke, cinders, sparks and soot, and that the running of the trains of the defendants, as aforesaid, over said road as aforesaid raises great clouds of dust and dirt, jars the surrounding property, and especially the property of these plaintiffs, so that large cracks have appeared in the ceilings and walls of the houses situate on the property of the plaintiffs and owned by plaintiffs, and the doors and windows of said houses rattle, the dishes and other things on the shelves in the houses of plaintiffs rattle, and the jar is so great that it awakens persons from sound sleep while occupying beds in the houses of plaintiffs situate on the property aforesaid.

"That the prevailing winds in the city of Spokane, wherein the property of plaintiffs is situated, as aforesaid, and wherein the railroad of the defendants is operated, as aforesaid, are from southwest to northeast, and the smoke, cinders, and soot so emitted from the engines of the defendants herein, and the dust, and dirt raised by the ordinary operation of the road of the defendants herein, as aforesaid, has and does penetrate into the houses of the plaintiffs, covering the furniture, walls, ceilings, carpets and curtains in said houses; that said smoke, cinders, soot, sparks, dirt and dust cover the lawn surrounding the said houses of plaintiffs, and cover the property of plaintiffs herein described, and frequently fires are started upon the property of the plaintiffs herein described from sparks emitted from said engines of said defendants; that said smoke, cinders, soot, sparks and fires so started therefrom injure the trees, shrubbery, gardens and vegetation in the yards of the plaintiffs on their said lot, as aforesaid; that gases coming from the operation of said engines of defendants penetrate through

the buildings on said property, as aforesaid, and render the same uninhabitable."

The complaint contains no allegations pointing to any negligence on the part of respondent in the operating of its railway. It is not claimed—indeed, we think it could not be, with any show of reason in the light of these allegations,— that respondent has ever used other than the commonly used facilities of steam railways, or that it has ever negligently used such facilities, or that the injury to appellants' property is other than a result necessarily incidental to the proper operation of respondent's railway.

Our decision in *DeKay v. North Yakima & Valley R. Co.*, 71 Wash. 648, 129 Pac. 574, it seems to us, is decisive of this case in respondent's favor, unless the holding there announced is to be overruled. We there held, in effect, that the casting of smoke and cinders from the locomotives of the railway company on the adjoining property of DeKay, and the jarring of his property and buildings by the operation of the railway company's trains, all of which resulted in depreciating the value of his property, was, in the absence of negligence on the part of the railway company, *damnum absque injuria*. Our conclusion reached in that decision was rested upon the doctrine announced in the last paragraph, commencing with the word "but," of the following quotation from the decision in *Smith v. St. Paul, Minn. & M. R. Co.*, 39 Wash. 355, 81 Pac. 840, 109 Am. St. 889, 70 L. R. A. 1018:

"The jarring of the earth of respondents' lots and the casting of soot and cinders thereupon, and the emission of smoke physically injuring property, are injurious physical effects to the *corpus* of respondents' property, which, we think, come within the scope of the term 'damaged,' as used in the constitutional provision. If a railroad company cannot carry on its business upon its own property without necessarily disturbing the physical conditions of other property, it is evident that such company has not acquired sufficient property for the conduct of its business, and it

should be required to pay such damages as the actual
physical disturbance of the neighboring property entails
thereupon.    But the ringing of bells, sounding of whistles,
rumbling of trains, and other usual noises, and the emission
of smoke, gases, fumes, and odors are necessarily incidental
to the proper operation of the road, and when not resulting
from negligence, are such consequential injuries as must be
held to have been anticipated by any one acquiring property
in or about such a city, and are regarded as *damnum absque
injuria.*"

Counsel for appellants now insist that our decision in the
*DeKay* case should be limited in its effect by the observation
made by the court in the first part of the above quotation
from the *Smith* case, or that the holding in the *DeKay* case
should be overruled, in so far as it denies the right of re-
covery of damages resulting in the jarring of adjoining
property or the casting of physical substance thereon in the
nature of soot or cinders.    We may concede that our de-
cision in the *DeKay* case is somewhat out of harmony with
the first part of the above quotation from the *Smith* de-
cision, and to that extent the *DeKay* decision was in effect
an overruling of the *Smith* decision.    The above quoted
language from the *Smith* decision, when read as a whole, we
now regard as somewhat unfortunate.    Upon reflection we
think it will readily appear that the rule announced in the
first portion of the above quoted language is inconsistent
with that announced in the latter portion thereof, the latter
announcing the rule upon which we rested our decision in
the *DeKay* case.    The learned writer of the decision in the
*Smith* case seems to have regarded damages resulting from
the jarring of adjoining property and the casting of soot
and cinders thereon, recoverable because of the physical na-
ture of such substance and the resulting physical injury to
such property; and thus to distinguish the right of recovery
for such injury from injuries caused by the things mentioned
in the last paragraph of his observations above quoted.    We
find, however, mentioned in the last paragraph as causes of

damage for which recovery may not be had, "smoke," "gases" and "fumes." But manifestly, these are no less physical, either in their composition or effect, than "soot" or "cinders," nor is their effect less of a physical nature than that of the jarring of adjoining property. It seems to us that the problem, in its last analysis, is to be solved, not by the nature of the cause or the result of the injury, but by the proper answer to the question of whether or not the injury is necessarily the result of the proper operation of the railway. It is not so much the nature or extent of the injury resulting to appellants' property as it is the right of the railway company to do the things resulting in the injury complained of. Respondent acting within its rights and being free from negligence, the resulting injury to adjoining property does not give rise to an actionable wrong in favor of the owner of such property. The authorities reviewed and extensively quoted from the *Smith* decision support this view. For instance, there is quoted in that decision, with apparent approval, from *Bennett v. Long Island R. Co.*, 181 N. Y. 431, 74 N. E. 418, the following:

"The rumble of trains, the clanging of bells, the shriek of whistles, the blowing off of steam, the discordant squeak of wheels in going around the curves, the emission of smoke, soot, and cinders, all of which accompany the operation of steam cars, are undoubtedly nuisances to the neighboring dwellings in the popular sense, but as they are necessarily incident to the maintenance of the road, they do not constitute nuisances in the legal sense, but are regarded as protected by the legislative authority which created the corporation and legalized its corporate operations. Nor does the legal nature of such annoyances change as traffic increases them in volume and extent."

Quotations of similar import are made in the *Smith* decision from *Aldrich v. Metropolitan W. S. El. R. Co.*, 195 Ill. 456, 63 N. E. 155, 57 L. R. A. 237; *Pennsylvania R. Co. v. Marchant*, 119 Pa. St. 541, 13 Atl. 690, 4 Am. St. 659; *Pennsylvania R. Co. v. Lippincott*, 116 Pa. St. 472,

9 Atl. 871, 2 Am. St. 618, and *Austin v. Augusta T. R. Co.*,
108 Ga. 671, 34 S. E. 852, 47 L. R. A. 755. In *Carroll v.
Wisconsin Cent. R. Co.*, 40 Minn. 168, 41 N. W. 661, dealing
with claimed damages of the nature here sought to be re-
covered for, the court observed:

"Railroads are a public necessity. They are always con-
structed and operated under authority of law. They bring
to the public great benefits: to some persons more, to other
persons less. The operating them in the most skillful and
careful manner causes to the public necessary incidental in-
conveniences, such as noise, smoke, cinders, vibrations of the
ground, interference with travel at the crossings of roads and
streets, and the like. One person may suffer more from these
than another. For instance, one whose premises lie within
a hundred feet of the railroad will feel the inconveniences in
a greater degree than one whose premises are at the distance
of a thousand feet; and one who has to pass many times a
day along a street crossed by a railroad suffers more in-
convenience from it than one who seldom has occasion to
pass. But the difference is only in degree, not in kind. Such
inconveniences are common to the public at large. If each
person had a right of action because of such inconveniences,
it would go far to render the operating of railroads practical-
ly impossible."

In *Beseman v. Pennsylvania R. Co.*, 50 N. J. 235, 13 Atl.
164, dealing with a similar problem, Chief Justice Beasley,
speaking for the court, observed:

"That this proposition, on which the plaintiff's case rests,
is a most momentous one, is at once apparent. If it should
be sustained, an illimitable field of litigation would be
opened. If a railroad, by the necessary concomitants of its
use, is an actionable nuisance with respect of the plaintiff's
property, so it must be as to all other property in its vicinity.
It is not only those who are greatly damnified by the illegal
act of another to whom the law gives redress, but its vindica-
tion extends to every person who is damnified at all—unless,
indeed, the loss sustained be so small as to be unnoticeable by
force of the maxim *de minimis non curat lex*. The noises and
other disturbances necessarily attendant on the operation of
these vast instruments of commerce are wide spreading, im-

pairing, in a sensible degree, some of the usual conditions upon which depend the full enjoyment of property in their neighborhood; and, consequently, if these companies are to be regarded purely as private corporations, it inevitably results that they must be responsible to each person whose possessions are thus molested. Such a doctrine would make these companies, touching such land-owners, general tort-feasors. Their tracks run for miles through the cities of the state, and every land-owner on each side of the track would be entitled to his action; and so in the less populated districts, each proprietor of lands adjacent to the road would have a similar right, and thus the litigants would be numbered by thousands. It is questionable whether the running of railroads would be practicable if subjected to such a responsibility."

See, also, *Randle v. Pacific Railroad,* 65 Mo. 325; *Thomason v. Seaboard Air Line R. Co.,* 142 N. C. 300, 55 S. E. 198; *Atchison, T. & S. F. R. Co. v. Armstrong,* 71 Kan. 366, 80 Pac. 978, 114 Am. St. 474, 1 L. R. A. (N. S.) 113; *Hyde v. Minnesota, D. & P. R. Co.,* 29 S. D. 220, 136 N. W. 92.

Nor is this doctrine fraught with any such injustice as a superficial view thereof might suggest. Let us suppose for a moment that there were no railroads in or near the city of Spokane. What then, it may well be asked, would appellants' property, which is here claimed to be injured, be worth? The logic of appellants' contention given its ultimate effect would in all probability destroy what is probably the greatest single potency which lends value to their property. Without railroads it is highly probable that the value of all the property within the present limits of the city of Spokane would only be that of a comparatively small town or village. While the ordinary operation of such railways may seemingly damage much adjoining property, it is to be remembered that, in the vast majority of cases, railways are the most potent influence lending value to such property. A more nearly correct view, probably, is that appellants' property, by reason of the presence of this and other railways in and through

the city of Spokane, is measurably *less benefited* by the presence of such railways than some other property within the city which may be so situated as to reap the benefits and not suffer the inconveniences which in a measure also attend the presence of the railways. A thought akin to this was expressed by us in *Larned v. Holt & Jeffery*, 74 Wash. 274, 133 Pac. 460, 46 L. R. A. (N. S.) 635, where we said, touching the inconvenience and injury to property caused by carrying on of a street improvement:

"It is apparent to the most casual observer that property and business locations in our centers of population are desirable and derive well known advantages from being so situated. The density of population which renders such locations valuable also renders the more necessary public improvements of the nature here involved, to the end that such advantages may be more fully enjoyed. The making of such public improvements necessarily results in more or less temporary inconvenience, and even damage to property and business in their neighborhood while being constructed. Aside from acts of negligence on the part of the public authorities in constructing such improvements, owners of property and business so temporarily inconvenienced or even damaged must bear such burdens as an incident to the enjoyment of the advantages which their locations give them."

See, also, *Hieber v. Spokane*, 73 Wash. 122, 131 Pac. 478.

Some contention is made rested upon the eminent domain provision of our constitution that "no private property shall be *taken or damaged*" without just compensation. Counsel seem to proceed upon the theory that appellants are in effect simply seeking compensation from respondent by reason of its exercising the right of eminent domain, and that therefore the word "damaged" as used in our constitution gives them a right of recovery for the injuries they here claim to have received. This problem seems to have been well answered in *Austin v. Augusta T. R. Co.*, 108 Ga. 671, 34 S. E. 852, 47 L. R. A. 755, where, dealing with a similar problem under an eminent domain constitutional provision in substance the same as ours, and where damages were

claimed of the same nature as those here claimed, Chief Justice Simmons, speaking for the court, said:

"Plaintiff insists that, as the market value of her lot had been diminished, in consequence of the operation of the railroad, she is entitled to recover therefor, by virtue of the provision in the constitution that 'private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid.' In a popular sense, the word 'damage' does frequently mean depreciation in value, whether such depreciation is caused by a wrongful or a lawful act; but in statutes or other legal instruments giving compensation for 'damages' the word always refers to some actionable wrong—some loss, injury, or harm which results from the unlawful act, omission, or negligence of another. In this sense, and as a well-defined law term, it was used in the constitution, to give the owner of private property compensation for the actionable wrong whereby his property had been damnified; but it did not give him compensation for depreciation in value caused by any legal act, since in law such an act was innocent, and therefore harmless, or, if not actually harmless, '*damnum absque injuria.*' There is nothing in the language of the constitution, or in the debates or in the proceedings of the convention, which shows any intent to enlarge its definition, or to make it mean more than it had always meant as a law term."

In *Pennsylvania R. Co. v. Marchant*, 119 Pa. St. 541, 13 Atl. 690, 4 Am. St. 659, where a similar problem was involved under a constitutional provision like ours, except that it used the word "injury" instead of "damages," Justice Paxson, speaking for the court, said:

"The language of the constitution is not equivocal, and is entirely free from ambiguity. The framers of that instrument understood the meaning of words, and many of them were among the ablest lawyers in the state. Two of them occupy seats upon this bench. Hence, when they extended the protection of the constitution to persons whose property should be injured or destroyed by corporations in the construction or enlargement of their works, we must presume they meant just what they said: that they intended to give a remedy merely for legal wrongs, and not for such

injuries as were *damnum absque injuria.* Among the latter class of injuries are those which result from the use and enjoyment of a man's own property in a lawful manner, without negligence and without malice."

It is worthy of note that this language from the Georgia and Pennsylvania courts is quoted with approval in *Smith v. St. Paul, Minn. & M. R. Co., supra.* In the late case of *Hyde v. Minnesota, D. & P. R. Co.,* 29 S. D. 220, 136 N. W. 92, the question was reviewed at length in the light of the provision of the constitution of South Dakota, in substance the same as ours, and a conclusion reached in harmony with the Georgia and Pennsylvania decisions. We are of the opinion that this eminent domain constitutional provision does not change or lessen the force of the doctrine of *damnum absque injuria.*

The following decisions are of interest in this connection though readily distinguishable, we think, from this case: *Farnandis v. Great Northern R. Co.,* 41 Wash. 486, 84 Pac. 18, 111 Am. St. 1027, 5 L. R. A. (N. S.) 1086; *Keil v. Grays Harbor & P. S. R. Co.,* 71 Wash. 163, 127 Pac. 1113, and *Patrick v. Smith,* 75 Wash. 407, 134 Pac. 1076, 48 L. R. A. (N. S.) 740. None of these decisions have any reference to the ordinary operation of a steam railway and the incidental damage resulting to abutting property therefrom. The *Farnandis* case deals with a question of damage resulting from the sinking and subsiding of the earth caused by the construction of a tunnel by a railway company, and not with injuries resulting from the operation of the railway. The *Keil* case deals with the question of the building of a steam railroad in a public street as being an additional burden, to the injury of abutting property. There was not involved any question of injury to abutting property of the nature here involved, but only the right of the railroad company to occupy the street as against the rights of abutting property. The right of the property owner involved was not different in principle than as if the railroad were being actually

built over his property.  The *Patrick* case deals with the question of damage resulting from blasting in the construction of a railway.  That decision was rested upon the practically uniform holdings of the authorities that the casting of debris upon the land of another by blasting and damage resulting therefrom gives the landowner a right of action therefor, regardless of negligence in the doing of the blasting.

We conclude that the correct rule is announced in *DeKay v. North Yakima & Valley R. Co.*, *supra*, and the conclusions there reached are controlling in favor of respondent as to all the claims of damages made against it in this case, in view of the fact that no act of respondent is charged to have been accompanied by negligence, nor is it charged with any act other than is necessarily incidental to the proper operation of its railway.  In so far as observations made in the decision in *Smith v. St. Paul, Minn. & M. R. Co.*, *supra*, are inconsistent with this conclusion, we must now regard them as no longer controlling.

The judgment is affirmed.

MORRIS, C. J., HOLCOMB, MOUNT, and CHADWICK, JJ., concur.