[No. 23482. Department Two. March 29, 1932.]

Otto T. Aubol *et al., Appellants,* v. The City of Tacoma, *Respondent.*[1]

*Leo Teats* and *Ralph Teats,* for appellants.

*Wallace W. Mount, J. Charles Dennis,* and *Dix H. Rowland,* for respondent.

*A. C. Van Soelen* and *John E. Sanders, Amici Curiae.*

Millard, J.—Plaintiffs instituted this action in 1931 to recover for depreciation in value of their lands al-

[1]Reported in 9 P. (2d) 780.

leged to have resulted from the construction in 1926 of a dam and hydro-electric generating plant in Mason county by the city of Tacoma. The appeal is from the judgment of dismissal rendered upon plaintiffs' refusal to plead over, after the defendant's demurrer to the complaint was sustained.

The allegations of fact, admitted by the demurrer to be true, are summarized as follows and clearly show the complaint does not state facts sufficient to constitute a cause of action.

In 1926, the respondent municipal corporation constructed, pursuant to statutory authorization, a dam and hydro-electric generating plant in Mason county below lake Cushman, on the north fork of the Skokomish river. By reason of the construction of the reservoir, which contains five hundred and forty thousand acre feet of water, the water of lake Cushman was raised approximately one hundred and sixty-five feet above its normal height. The water stored behind the dam reaches a height of seven hundred and thirty-five feet above sea level, and created a lake one mile wide and five or six miles in length.

Appellants own and reside upon one hundred and sixteen acres of land located on the south fork of the Skokomish river valley. That land is one-fourth of a mile from the junction of the north and south forks of the Skokomish river, and a few feet above the elevation of the river. Appellants' land is not riparian to the Skokomish river or the north fork of the river. It is eight miles from the dam which was erected on the north fork of the Skokomish river for the purpose of impounding the waters of the north fork and utilizing the same for power purposes.

The north fork of the river, from the site of the dam and generating plant to the junction of the north and south forks of the river, runs through a narrow bed,

with high, precipitous banks. The junction of the north and south forks of the river is upon a flat valley about one-half mile wide, and extending a distance of several miles up the south fork of the Skokomish river. If the dam were to break, the impounded water would escape through the canyon through which the north fork of the river flows. The flood of water, when it reached the junction of the north and south forks of the river, would engulf Skokomish valley and destroy appellants' property.

The fear of such a catastrophe has destroyed appellants' repose and caused a diminution in value of appellants' land. It is alleged that, by reason of the erection of the dam and storage of water behind the same, the appellants'

" . . . comfort, repose and safety are removed, lost and taken from them; that their property and lives are endangered and rendered insecure. . . . a large proportion of the prospective purchasers of plaintiffs' [appellants'] property refuse to consider the purchase thereof because of the feeling of fear and apprehension caused by the erection of said dam. That by reason thereof the market value of plaintiffs' [appellants'] property has been greatly reduced."

Appellants contend that, as the market value of their land has been diminished by reason of the construction and maintenance of the dam, they are entitled to recover therefor by virtue of the constitutional provision that

"No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid. . . . " Art. I, § 16, State Constitution.

It is appellants' position that their apprehension of the failure of the dam to hold the impounded water, the escape of which would destroy their property, interferes with their comfortable enjoyment of

life and property; and that a like fear on the part of prospective purchasers of the land prevented the sale of the property and caused a diminution in the market value of the land.

There is no allegation that the erection and maintenance of the dam deprived appellants of any water rights; that any of the soil of appellants had been taken or damaged; or that the dam in any manner interfered with appellants' light, or air, or access to their land or productivity of their land. Neither is there any allegation of negligence in the construction or maintenance of the dam. While it is alleged that, if the dam fail, the appellants would suffer great injury, it is not alleged there is any likelihood of the reservoir failing and the waters escaping therefrom.

This is not an action to enjoin as a nuisance the impounding of water. There is no claim that the dam is a nuisance. True, a dam may become a nuisance, but respondent's dam can not be deemed one, as it was constructed and is being maintained under express statutory authority.

"Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." Rem. Comp. Stat., § 9916.

This is not a case of overflowing with water the lands of an individual, or the physical invasion of another's property by superinduced addition of water, earth, sand or other material thereon, nor is it a case of physical invasion of one's property with smoke, gas, fumes or cinders.

Appellants' land is non-riparian and eight miles from the dam. The only damage claimed is that of apprehension that the dam may break, an unreasonable fear under the facts of the case. The state has provided (Rem. Comp. Stat., § 7351, *et seq.*), as it had the constitutional right to do, for the conservation of

its water power, and also provided how the same shall be developed and distributed. Pursuant to authority granted by the state, the dam was built—and in conformity with the legislative mandate, the dam was maintained—by the respondent municipal corporation under the direction and supervision of the state official charged with the duty of requiring such construction and maintenance as would assure and secure safety to life and property.

"Any person . . . intending to construct any dam . . . shall, before beginning said construction, submit plans and specifications of the same to the state hydraulic engineer for his examination and approval as to its safety . . . No such dam or controlling works shall be constructed until the same or any modification thereof shall have been approved as to its safety by the state hydraulic engineer." Rem. Comp. Stat., § 7388.

"In so far as may be necessary to assure safety to life or property, he [hydraulic engineer] shall inspect the construction of all dams . . . and he may require such necessary changes in the construction or maintenance of said works, to be made from time to time, as will reasonably secure safety to life and property." Rem. Comp. Stat., § 7358.

The damages, if any, of which appellants complain, are not from the taking of any property of the appellants, but are consequential. Such damages as the appellants claim they suffered did not result from any negligence or wrongdoing of the respondent. The respondent was not negligent in the construction or in the maintenance of the dam. The constitutional guaranty that no private property shall be taken or *damaged* without just compensation having first been paid, does not authorize compensation to appellants for depreciation in the market value of their lands, as the diminution, if any, in value of the land was caused

by a legal act, which is in law *damnum absque injuria.*

In *Taylor v. Chicago, Milwaukee & St. P. R. Co.*, 85 Wash. 592, 148 Pac. 887, L. R. A. 1915E, 634, we held that the casting of smoke, sparks and soot on premises sixty feet distant from the defendant's tracks, necessarily incident to the ordinary operation of a railroad, which resulted in depreciating the value of such premises, was *damnum absque injuria,* in the absence of negligence on the part of the railway company. We said:

"Some contention is made rested upon the eminent domain provision of our constitution that 'no private property shall be *taken* or *damaged'* without just compensation. Counsel seem to proceed upon the theory that appellants are in effect simply seeking compensation from respondent by reason of its exercising the right of eminent domain, and that therefore the word 'damaged' as used in our constitution gives them a right of recovery for the injuries they here claim to have received. This problem seems to have been well answered in *Austin v. Augusta T. R. Co.*, 108 Ga. 671, 34 S. E. 852, 47 L. R. A. 755, where, dealing with a similar problem under an eminent domain constitutional provision in substance the same as ours, and where damages were claimed of the same nature as those here claimed, Chief Justice Simmons, speaking for the court, said:

" 'Plaintiff insists that, as the market value of her lot had been diminished, in consequence of the operation of the railroad, she is entitled to recover therefor, by virtue of the provision in the constitution that "private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid." In a popular sense, the word "damage" does frequently mean depreciation in value, whether such depreciation is caused by a wrongful or a lawful act; but in statutes or other legal instruments giving compensation for "damages" the word always refers to some actionable wrong— some loss, injury, or harm which results from the unlawful act, omission,

or negligence of another. In this sense, and as a well-defined law term, it was used in the constitution, to give the owner of private property compensation for the actionable wrong whereby his property had been damnified; but it did not give him compensation for depreciation in value caused by any legal act, since in law such an act was innocent, and therefore harmless, or, if not actually harmless, *"damnum absque injuria."* There is nothing in the language of the constitution, or in the debates or in the proceedings of the convention, which shows any intent to enlarge its definition, or to make it mean more than it had always meant as a law term.'

"In *Pennsylvania R. Co. v. Marchant,* 119 Pa. St. 541, 13 Atl. 690, 4 Am. St. 659, where a similar problem was involved under a constitutional provision like ours, except that it used the word 'injury' instead of 'damages,' Justice Paxson, speaking for the court, said:

" 'The language of the constitution is not equivocal, and is entirely free from ambiguity. The framers of that instrument understood the meaning of words, and many of them were among the ablest lawyers in the state. Two of them occupy seats upon this bench. Hence, when they extended the protection of the constitution to persons whose property should be injured or destroyed by corporations in the construction or enlargement of their works, we must presume they meant just what they said: that they intended to give a remedy merely for legal wrongs, and not for such injuries as were *damnum absque injuria.* Among the latter class of injuries are those which result from the use and enjoyment of a man's own property in a lawful manner, without negligence and without malice.' " *Taylor v. Chicago, Milwaukee & St. P. R. Co.,* 85 Wash. 592, 148 Pac. 887.

Appellants' apprehension that, at some future time, the dam may break and the impounded waters escape, is an ill-defined fear; it is not based upon any tangible reason. Appellants did not allege there was any likelihood of the reservoir breaking, nor did they set forth in their complaint aught which would warrant the fear

that the dam may fail. It will be presumed that the skilled engineers of the state charged with the duty of requiring such maintenance of the dam as will assure and secure safety to life and property, performed their duty. The appellants' fear is not well grounded. There is no reasonable probability of damage from failure of the reservoir to retain the impounded waters.

Appellants contend that *Jacobs v. Seattle*, 100 Wash. 524, 171 Pac. 662, sustains their position that damages may be recovered where there is not an actual taking of the property. That was not a case of consequential injury to private property by reason of authorized public improvements. In the case cited, there was a physical invasion of the plaintiff's property. The city's incinerator gave off obnoxious vapors, and ashes and pieces of partly burned garbage were thrown from the incinerator over and upon the plaintiff's adjoining property. It differs not in principle from the overflowing of the lands of an individual or any other actual invasion by addition of earth or other material upon the land so as to effectually destroy its usefulness.

*Ferry v. Seattle*, 116 Wash. 648, 200 Pac. 336, 203 Pac. 40, does not sustain the contention that the complaint states a cause of action. That was an appeal by the city of Seattle from a decree enjoining, as a nuisance, the construction of an earth reservoir in Volunteer park. We affirmed the judgment. In that case, quite different from the case at bar, the fear of the complainants was based upon facts—they were under reasonable apprehension of danger; they dwelt within the shadow of the reservoir. In the case at bar, the appellants are eight miles distant from the dam. In the case cited, there was evidence of the probable breaking of the reservoir because of the

nature of the soil, the contour of the ground and the prevalence of slides. There was a reasonable expectation that disaster would happen. We said:

"On the other hand, experts on behalf of the respondents testified that the proposed reservoir would continually threaten danger. With such a record before us, it is difficult to say that the respondents have not a reasonably grounded apprehension.

"The test as to whether a structure of the proposed character is to be declared a nuisance turns on whether the complaining property owners are under a reasonable apprehension of danger, and the question of the reasonableness of the apprehension turns again, not only on the probable breaking of the reservoir, but the realization of the extent of the injury which would certainly ensue. That is to say, the court will look to consequences in determining whether the fear existing is reasonable. For instance, if the reservoir were being built in some place where, should it break, the resultant damage would be merely to property which could adequately be recompensed, the court would be more apt to hesitate in declaring it a nuisance than where, should a break occur, not only property of immense value would be destroyed, but many lives would be lost as well.

"It cannot be said that the property owners dwelling in the shadow of the fifty-six foot embankment would not live under a reasonable apprehension, based upon the testimony in this case, that sooner or later they and their property would be destroyed by this contemplated reservoir. Reservoirs built upon the expert advice of city engineers, and sealed with the approval of other experts called in to substantiate that advice, have been known to not hold water. All the experts agree that there will be an inevitable leakage, to some extent, in the proposed reservoir. With this advice of these experts, and with a general knowledge of the contour of the ground, the nature of the soil, the prevalence of slides in similar situations in Seattle, and the disasters that have happened from the bursting of impounded waters, the respondents have, as a result of all these things, a fear which interferes with their comfortable

enjoyment of life and property, and allege that the construction of the reservoir annoys, injures and endangers their comfort, repose and safety, and renders them insecure in life and the use of their property. If they have reason for this attitude they must succeed in this action. If this situation supports a reasonable expectation that disaster may happen, and such expectation leads to a depreciation in the value of adjoining properties, the structure will be considered a nuisance.''

We have examined all of the authorities cited, and find they are in harmony with the views herein expressed or are distinguishable from the case at bar.

The judgment is affirmed.

TOLMAN, C. J., MAIN, HOLCOMB, and BEALS, JJ., concur.