[No. 34949. Department One. September 24, 1959.]

WILLIAM WILKENING, *Appellant*, v. THE STATE OF WASHINGTON, *Respondent*.[1]

[1]Reported in 344 P. (2d) 204.

*Foster & Foster*, for appellant.

*The Attorney General* and *H. T. Hartinger, Assistant,* for respondent.

WEAVER, C. J.—The trial court granted an involuntary nonsuit at the close of plaintiff's case. Plaintiff appeals from a judgment dismissing his action with prejudice.

Plaintiff originally owned a tract of land, the southeasterly portion of which was a natural embankment sloping down to and including the adjacent tide lands in the DesChutes waterway in the city of Olympia. A portion of plaintiff's property below the embankment was subject to a thirty-foot railroad right of way traversed by a wooden trestle supporting a single railroad track. Plaintiff's home is at the top of the embankment.

In 1947, the legislature authorized the DesChutes Basin project. Its purpose was to improve that portion of the DesChutes river and its tidelands lying west and north of the present state capitol grounds. The primary feature of the project was to create Capitol lake by the construction of a dam and to construct parkways, causeways, streets, and highways around the lake. The statute authorized relocating and rerouting of railroad lines. Laws of 1947, ch. 186, p. 821; RCW 79.24.100 *et seq.*

February, 1950, by eminent domain, the state acquired a portion of plaintiff's land at the foot of a natural embankment, together with the tidelands, for use in the DesChutes Basin project.

Thereafter, the state constructed a fill upon the lands acquired from plaintiff. A civil engineer testified that

". . . the area where the trestle existed was filled in and it [the fill] carried on back on an elevation of about a foot and a half above what we call Olympia Datum to the hill. . . ."

The fill serves as a base for the DesChutes parkway. The state also installed a drain in the fill to carry off surface and percolating waters from plaintiff's premises; but the drain does not carry these waters as rapidly as they were carried away prior to construction of the fill. In 1951, after the fill was in place, two additional railroad tracks were constructed between the original track and the parkway.

In his opening brief, plaintiff designated his first cause of action as one for

"Damages for a material reduction of the value of plaintiff's remaining land by reason of the installation and continued use of multiple railroad tracks and the presence of multiple engines, freight cars and trains."

The state, in its answering brief, designates plaintiff's first cause of action as

"An action for damages *for departure from binding construction plans* in allowing the relocation of railroad tracks in front of appellant's [plaintiff's] premises." (Italics ours.)

The references in the complaint to the February, 1950, condemnation action suggest that plaintiff seeks recovery on the ground of departure from construction plans offered in that action. Moreover, a portion of plaintiff's evidence appears to have been offered in support of this theory, although the decree of condemnation entered in the prior condemnation action was not introduced in evidence. Plaintiff, however, disavowed this theory in his reply brief; hence, we need not discuss it.

We will, therefore, treat those portions of the complaint and the evidence which refer to the 1950 condemnation action as surplusage, and inquire whether plaintiff's evidence has established a right to relief against the state on the theory of constitutional damaging (Const., Art. I, § 16) independent of any departure from construction plans.

Paragraph V of plaintiff's first cause of action alleges:

"That by reason of the installation and continued use of said multiple railroad tracks, plaintiff has been subjected to the presence, annoyance, smoke and noise of multiple engines, freight cars and trains immediately adjacent to his home; that the continued presence of said multiple tracks,

engines, trains and railroad cars has materially reduced the value of plaintiff's remaining land; that by reason thereof, plaintiff has been damaged in the sum of $20,-000.00."

Interpreting plaintiff's evidence in the light most favorable to him (*Traverso v. Pupo*, 51 Wn. (2d) 149, 316 P. (2d) 462 (1957)), we find nothing that establishes a cause of action against the state.

In *Taylor v. Chicago, Milwaukee & St. Paul R. Co.*, 85 Wash. 592, 148 Pac. 887 (1915), this court held that the jarring of buildings, the casting of smoke, sparks and soot on premises, and the emitting of gases and fumes necessarily incident to the ordinary operation of a railroad through a city, which result in depreciating the value of neighboring property, is *damnum absque injuria*, in the absence of negligence on the part of the railway company. This court also held that Art. I, § 16 of the Washington constitution does not authorize compensation for depreciation in value caused by a legal act which is, in law, *damnum absque injuria*.

The complaint contains no allegations of negligence on the part of the state or the railroad. The evidence does not establish a relationship between the state and the railroad, nor does it disclose how or when the railroad acquired its right of way; nor does it justify an inference of negligence on the part of the state or the railroad.

█ The trial court did not err when it dismissed with prejudice the first cause of action against the state of Washington.

The complaint alleges that the state, having constructed the fill heretofore described, "failed to provide proper drainage for natural waters"; and thus caused said water to accumulate, which accumulation of water resulted in (1) slides and subsidence, of plaintiff's land (second cause of action); and (2) loss of ingress and egress to plaintiff's hillside property because a pathway became impassable (third cause of action). We agree with the trial court "that there is nothing about the third cause of action to distinguish it in principle from the second cause of action."

In his memorandum opinion, the trial judge said:

"As to the second cause of action, this Court takes the view that the actions complained of have nothing to do with the original condemnation proceedings and are as if brought between neighboring land owners, both private citizens.

"There is no blocking of a water course here. The evidence is clear that the water involved in the hillside in the case is percolating water. . . . This is a case of damnum absque injuria, as much as I hate to say that."

The "natural waters" which caused the slides and subsidence of plaintiff's hillside are described by an engineer as follows:

"Well, my analysis would be that the water table has been forced to a higher elevation [by the fill]. Of course, that has weakened the toe of the slope.
" . . .
"This fill has blocked off the drainage below the surface elevation of the fill where originally it had a chance to drain on out. Twice a day it could drain on out to zero as the tide goes out. That natural drainage has certainly been interfered with by the construction of the fill.
" . . .
"By the way, the water we speak of as coming out, *it's not surface water*, it's spring water, and they originally had a chance to discharge to the lower level.
" . . .
"The thing is, that there has been springs, but I think that is not surface waters there. It is water, of course as I explained, that had a chance to get out before and at a lower elevation. Now, by the fill being there, it is forced to come out at a higher elevation." (Italics ours.)

█ Plaintiff's evidence establishes the "natural waters" as subsurface waters. Are they percolating or are they from an underground water course?

█ The general rule is stated in 56 Am. Jur., Waters, § 103:

"It is well settled that unless it appears that underground water in a given case flows in a defined and known channel, it will be presumed to be percolating water, and that the burden of establishing the existence of an underground stream rests upon the party who alleges such fact."

In *Evans v. Seattle,* 182 Wash. 450, 453, 47 P. (2d) 984 (1935) this court said:

"What we conceive to be the general rule is well stated in 67 C. J. 834:
" 'All underground waters are presumed to be percolating, and, to take them out of the rule with regard to such waters, the existence and course of a permanent channel must be clearly shown.' "

■ Plaintiff's reference to the existence of "springs" and "spring waters" falls short of being sufficient to establish the fact that the "natural waters" involved are from "an underground stream flowing in any distinct, permanent, well-known and defined channel." *Evans v. Seattle, supra,* p. 456.

Plaintiff's evidence fails to establish the existence of an underground stream.

Counsel have not been able to refer us to a case in this jurisdiction (and we have found none) where this court has discussed the question of possible liability arising from the act of a landowners protecting his land from subsurface percolating waters. In *Evans v. Seattle, supra,* the factual situation was reversed: plaintiffs were denied damages for the alleged wrongful diversion of percolating underground waters, which diversion caused plaintiffs' springs to dry up. This court sustained the city's contention that

". . . any damage suffered by the respondents [plaintiffs] was what is known to the common law as *damnum absque injuria." Evans v. Seattle, supra,* p. 452.

■ The rule has been long established in this jurisdiction that

"If one in the lawful exercise of his right to control, manage or improve his own land, finds it necessary to protect it from surface water flowing from higher land, he may do so, and if damage thereby results to another, it is *damnum absque injuria." Cass v. Dicks,* 14 Wash. 75, 78, 44 Pac. 113 (1896)

The same rule finds support in: *Harvey v. Northern Pac. R. Co.,* 63 Wash. 669, 116 Pac. 464 (1911); *Wood v. Tacoma,* 66 Wash. 266, 119 Pac. 859 (1911); *Thorpe v.*

*Spokane,* 78 Wash. 488, 139 Pac. 221 (1914); *Morton v. Hines,* 112 Wash. 612, 192 Pac. 1016 (1920); *DeRuwe v. Morrison,* 28 Wn. (2d) 797, 184 P. (2d) 273 (1947).

■ Since a landowner, in the lawful exercise of his right to improve his own land, may protect it from *surface* waters without liability (*Cass v. Dick, supra*), no reason occurs to us why he should be liable for the result of lawful acts, upon his own land, which impede the flow of underground percolating waters. 56 Am. Jur., Waters, § 111, p. 594. If damages result to another, it is *damnum absque injuria.*

■ Plaintiff contends that the doctrine of *damnum absque injuria* does not apply to cases where there has been a constitutional damaging of property. We do not agree. This court has held that Art. I, § 16 of our constitution does not create a cause of action where none existed under the doctrine of *damnum absque injuria. Taylor v. Chicago, Milwaukee & St. P. R. Co.,* 85 Wash. 592, 148 Pac. 887 (1915); *Aubol v. Tacoma,* 167 Wash. 442, 9 P. (2d) 780 (1932); *DeKay v. North Yakima & Valley R. Co.,* 71 Wash. 648, 129 Pac. 574 (1913); *Smith v. St. Paul Etc. R. Co.,* 39 Wash. 355, 81 Pac. 840 (1905).

The judgment is affirmed.

DONWORTH, ROSELLINI, OTT, and HUNTER, JJ., concur.