[No. 60282-4.    En Banc.    March 17, 1994.]

ARTHUR E. PIERCE, ET AL, *Petitioners*, v. NORTHEAST
LAKE WASHINGTON SEWER AND WATER DISTRICT,
*Respondent.*

*Roger M. Leed* (of *Roger M. Leed, P.S.*), for petitioners.

*Inslee, Best, Doezie & Ryder, P.S.*, by *Peter A. Deming*, for respondent.

*Christine O. Gregoire, Attorney General, Theodore O. Torve, Senior Assistant*, and *John T. Hurley, Assistant*, amicus curiae for respondent.

*Dave Needy, Prosecuting Attorney for Skagit County*, and *John R. Moffat, Chief Civil Deputy*, on behalf of Washington Association of Prosecuting Attorneys, amicus curiae for respondent.

*Nicholas J. Manring* on behalf of Washington State Association of Municipal Attorneys and Association of Washington Cities, amici curiae for respondent.

SMITH, J. — Petitioners Arthur E. and Patricia L. Pierce seek review of a decision of the Court of Appeals, Division One, dismissing their inverse condemnation claim and affirming a judgment of the King County Superior Court which dismissed their complaint with prejudice and granted

summary judgment in favor of respondent Northeast Lake Washington Sewer and Water District (Respondent). We affirm the Court of Appeals.

## STATEMENT OF FACTS

The Northeast Lake Washington Sewer and Water District (District) is a municipal corporation providing water and sewer service to approximately 50,000 people.[1] In 1984, the District acquired 5.4 acres of residentially owned property in Lake Forest Park, King County, adjacent to property owned by Arthur E. and Patricia L. Pierce (Petitioners).[2] The District intended to construct a 4.3-million-gallon water storage tank on the property.[3] It looked at several other sites, but chose this one because the sloping hillside would enable the District to obscure sight of most of the tank, thus reducing "site impact" on neighboring residences farther up the hill,[4] and because the property was zoned RS 9600.[5]

On November 1, 1984, the District submitted an application to the King County Zoning Adjuster for an administra-

---

[1]Brief of Respondent, at 1.

[2]Petitioners' property runs 80 feet along 47th Avenue Northeast and is 300 feet deep. The property slopes off steeply to the north and east. Clerk's Papers, at 59.

[3]The District decided to develop its own storage capacity after the City of Seattle began imposing charges estimated to reach $140,000 in 10 years. Clerk's Papers, at 31.

[4]Brief of Respondent, at 1.

[5]King County Code (KCC) 21.08.062 provides:

"In an RS zone the following conditional uses only are permitted subject to the administrative approval of the zoning adjustor as set forth in Chapter 21.58, and subject to the off-street parking requirements, landscaping requirements, and the general provisions and exceptions set forth in this title beginning with Chapter 21.46, and the provisions of the King County shoreline management master program, where applicable:

". . . .

"B. Water storage reservoirs, tanks, or standpipes located above ground subject to the minimum standards set forth for public utility facilities in K.C.C. 21.08.070."

tive conditional use permit[6] to construct its 4.3-million-gallon water storage tank on the property.[7] On April 22, 1985, the zoning adjuster denied the administrative conditional use permit for the proposed tank,[8] concluding that the proposed tank was not compatible with the surrounding residential uses, that there would be a significant impact on the views of surrounding residents, and that there would be substantial land use conflicts.[9]

On July 16, 1985, the District appealed the decision of the zoning adjuster to the King County zoning and subdivision examiner. The District submitted a substantially revised proposal for the water tank at the site.[10] After reviewing the record, Robert E. Beaty, deputy zoning and subdivision examiner, granted the administrative conditional use permit with appropriate conditions imposed on

---

[6]KCC 21.58.040 provides:

"The purpose of a conditional use permit shall be:

"A. To assure by means of imposing special conditions and requirements on development, that the compatibility of uses, a purpose of this title, shall be maintained, considering other existing and potential uses within the general area of the proposed use;

"B. The conditions imposed shall be those which will reasonably assure that nuisance or hazard to life or property, will not develop. The adjustor may not use a conditional use permit to reduce the zoning requirements of the zone in which the use is to locate. Such reduction of requirements shall be accomplished through the medium of a variance."

[7]Clerk's Papers, at 31.

[8]KCC 21.58.030 provides:

"Upon application, the zoning adjustor may grant conditional use permits for such uses as require them under this title. The adjustor may deny an application if the characteristics of the intended use would create an incompatible or hazardous condition."

[9]Clerk's Papers, at 31.

[10]The revised proposal submitted by the District proposed to move the water tank up the hill and set it into the bank to reduce its visual impact. The tank would be 30 feet deep and 160 feet in diameter, in contrast to the originally proposed one which would have been 80 feet deep and 100 feet in diameter. Clerk's Papers, at 31.

the District to mitigate impact of the project on the surrounding area.[11]

In July 1986, the District contracted with Skaar Construction, Inc., to construct the water tank on the site. Construction was begun in July 1986 and completed in December 1987, in compliance with all terms and conditions of the conditional use permit.[12]

As authorized by the zoning and subdivision examiner, the 4.3-million-gallon water storage tank was 160 feet in diameter and 30 feet high.[13] Although it was constructed entirely on the property of the District, it was no more than 50 feet away from Petitioners' house.[14] The top of the tank was planted with grass, which was left in its natural condition, and the property surrounding it was maintained with shrubbery, trees and other forms of vegetation and grass.[15]

In March 1988, Petitioners retained David E. Hunnicutt, an appraiser with Hugh A. Thompson & Associates, Inc., to determine the effect of construction of the water tank upon their property value.[16] Mr. Hunnicutt determined that construction of the tank resulted in a $30,000 loss in value to Petitioners' property.[17]

On September 25, 1989, Petitioners filed a complaint for nuisance, trespass, negligence and inverse condemnation in the King County Superior Court against Respondent District and its general contractor, Skaar Construction, Inc., based upon construction and maintenance of the water storage

---

[11]Clerk's Papers, at 36-39.

[12]Clerk's Papers, at 2, 8.

[13]Opening Brief of Appellant, at 1.

[14]Clerk's Papers, at 60.

[15]Brief of Respondent, at 2.

[16]Clerk's Papers, at 51-52.

[17]David E. Hunnicutt based his conclusion upon (1) height and volume of the tank; (2) proximity of the tank to Petitioners' adjacent property; (3) incompatibility; (4) intrusion; and (5) loss of Petitioners' view. Clerk's Papers, at 53-55.

tank adjacent to their property.[18] Petitioners claim the tank is constantly visible from most of the "view" rooms of their home and particularly obstructs their view of Mount Rainier and the Cascades.[19] Petitioners settled all claims against Respondent with the exception of the inverse condemnation claim.[20] The District moved for summary judgment.

On November 1, 1991, the King County Superior Court, the Honorable George A. Finkle, granted summary judgment in favor of the District and dismissed the complaint with prejudice because Petitioners failed to demonstrate compensable damage to a property right for which they would be entitled to compensation.[21] On November 27, 1991, Petitioners filed a notice of appeal to the Court of Appeals, Division One.[22] On February 16, 1993, the Court of Appeals, Judge Jack P. Scholfield writing, affirmed the judgment of the King County Superior Court. We granted review on July 8, 1993.

### QUESTIONS PRESENTED

The questions presented in this case are (1) whether lawful construction and maintenance of a public structure which obstructs portions of adjacent property owners' view from their property constitutes a taking or damaging of their property under Washington Constitution article 1, section 16 (amendment 9); and (2) if there was a taking or damaging of their property, whether the adjacent property owners are entitled to just compensation.

---

[18]Clerk's Papers, at 3-6.

[19]Opening Brief of Appellant, at 1. In the Declaration of Patricia L. Pierce, Petitioner stated that "[t]he . . . tank . . . substantially blocks our view of the wooded terrain, of Lake Washington, and even of Mount Rainier and the Cascades, depending upon which view point is considered. From any of the main rooms of our house, and most of our bedrooms, you can clearly see the tank anytime you look out the window." Clerk's Papers, at 59-60.

[20]Opening Brief of Appellant, at 5.

[21]Clerk's Papers, at 95-97.

[22]Clerk's Papers, at 98.

DISCUSSION

██ This is an action in inverse condemnation brought by Petitioners against Northeast Lake Washington Sewer and Water District, a municipal corporation. Inverse condemnation is an action to "recover the value of property which has been appropriated in fact, but with no formal exercise of the [condemnation] power."[23] "Our constitution requires that just compensation be paid a landowner in the event of either a governmental 'taking' or 'damaging' of property."[24] Petitioners must prove a taking or damaging under article 1, section 16 (amendment 9) of the Washington Constitution if this court is to find they are entitled to just compensation. That section provides that "No private property shall be taken or damaged for public or private use without just compensation having been first made . . . ."

Under a general takings analysis, the elements of an inverse condemnation action are not in dispute. However, the only Washington case which considered a property owner's right to a view is *State v. Calkins.*[25] In that case the court stated

> Clearly, there has been no specific declaration by our legislature of an intention to pay compensation for nonexistent property rights; *i.e.,* access, air, view and light; furthermore, absent such rights, the condemnation proceedings herein do not violate Art. I, § 16, of our state constitution, which requires the payment of just compensation for the taking or damaging of property rights.[26]

Although *Calkins* was not an action for inverse condemnation based upon interference with a property owner's right to a view, it is nevertheless somewhat indicative of this court's position on the matter. Because our own decisions

---

[23]*Martin v. Port of Seattle,* 64 Wn.2d 309, 310 n.1, 391 P.2d 540 (1964), *cert. denied,* 379 U.S. 989 (1965) (quoting *Thornburg v. Port of Portland,* 233 Or. 178, 376 P.2d 100 (1962)).

[24]*Petersen v. Port of Seattle,* 94 Wn.2d 479, 484, 618 P.2d 67 (1980).

[25]50 Wn.2d 716, 314 P.2d 449 (1957).

[26]*Calkins,* at 723.

have not squarely addressed this issue, we may look to decisions from other jurisdictions which have dealt with inverse condemnation actions based upon interference with a property owner's right to a view. Cases from intermediate appellate courts in California and New York are the only ones which suggest a possible answer in this case.

Petitioners claim they are entitled to compensation under article 1, section 16 (amendment 9) of the Washington Constitution because construction of the water tank interferes with their view of Mount Rainier, the Cascades and Lake Washington, and because the water tank is not as aesthetically pleasing as the vacant land prior to construction of the tank.[27] They further claim construction of the water tank reduced the market value of their property.[28] Thus Petitioners assert a property interest in their right to a view, and claim this property right or interest was disturbed when the District constructed its 4.3-million-gallon water storage tank.

In *Pacifica Homeowners' Ass'n v. Wesley Palms Retirement Comm'ty*, the California Court of Appeal concluded that "[a]s a general rule, a landowner has no natural right to air, light or an unobstructed view and the law is reluctant to imply such a right."[29] However, "[s]uch a right may be created by private parties through the granting of an easement or through the adoption of conditions, covenants and restrictions or by the Legislature."[30]

In *Pacifica*, the Homeowners' Association (Association) attempted to enjoin the Wesley Palms Retirement Community from allowing trees on its property to grow higher than the Association's five-story building.[31] The Association

---

[27]Clerk's Papers at 58-62.

[28]Opening Brief of Appellant, at 13.

[29]*Pacifica Homeowners' Ass'n v. Wesley Palms Retirement Comm'ty*, 178 Cal. App. 3d 1147, 1152, 224 Cal. Rptr. 380 (1986).

[30](Citations omitted.) *Pacifica*, at 1152.

[31]*Pacifica*, at 1150.

claimed a conditional use permit placed a limitation on tree height, which was "imposed particularly for the benefit of the uphill landowners including the Association."[32] However, the court rejected the Association's arguments and stated that "[i]n the absence of any agreement, statute or governmentally imposed conditions on development creating a right to an unobstructed view, it cannot be said Wesley Palms . . . interfered with any right."[33]

In *Gervasi v. Board of Comm'rs of Hicksville Water Dist.*,[34] the facts closely parallel those in this case. The plaintiffs in that case sought to enjoin the water district from completing construction of a water tank or to recover damages measured by the reduced value of their homes caused by construction of the water tank. In that case, the water district constructed a water storage tank on its own property. The plaintiffs claimed construction and maintenance of the tank reduced the market value of their properties. Their action was brought under the New York Constitution, which provides that "private property shall not be taken for public use without just compensation."[35] The New York Supreme Court, Special Term, concluded that the plaintiffs failed to state a cause of action because they had not been deprived of "property within the meaning of that provision as it ha[d] been construed by the courts."[36] The court determined that the plaintiffs had no cause of action because the water district constructed the water tank on its own property. The court found no deprivation of property under the takings clause of the New York Constitution.

Similarly, in the case now before us, the District constructed a water tank on its own property. We agree with the reasoning in *Gervasi*. We conclude that Petitioners have

---

[32]*Pacifica*, at 1153.

[33]*Pacifica*, at 1156.

[34]45 Misc. 2d 341, 256 N.Y.S.2d 910 (1965).

[35]N.Y. Const. art. 1, § 7.

[36]*Gervasi*, at 343.

not been deprived of any property rights because the District is acting only upon its own property.

The court in *Gervasi* further concluded that "[d]amages cannot be recovered because of the unsightly character of a structure and aesthetic considerations are not compensable in the absence of a legislative provision."[37] The damages argument made by the plaintiffs in *Gervasi* parallels Petitioners' claim in this case that the water tank caused a loss in the market value of their property.[38]

██ Following the reasoning of the New York court in *Gervasi*, we conclude that Petitioners are not entitled to compensation for damages solely because of the unsightly character and the unaesthetic appearance of the water tank. Following the reasoning of the California decision in *Pacifica* and the decision in *Gervasi*, we conclude that Petitioners do not have a cause of action for inverse condemnation based on their claimed "right to a view". The water tank was a permissible use constructed and maintained solely upon the property of the District.

We recognize, though, that a right to a view can be created by easement.[39] "The courts unanimously hold that . . . an owner is entitled to just compensation if this easement or property right is taken or damaged."[40] The right to an unobstructed view does not exist, absent an agreement, statute or governmentally imposed condition affirmatively creating that right.[41] Under the facts of this case, we cannot conclude that Petitioners are entitled to compensation because construction of the water storage tank on the adjacent property

---

[37](Citations omitted.) *Gervasi*, at 343; *see also Public Serv. Co. v. Catron*, 98 N.M. 134, 646 P.2d 561 (1982).

[38]Clerk's Papers, at 53.

[39]*See, e.g., Kirk v. Tomulty*, 66 Wn. App. 231, 831 P.2d 792 (1992); *Beebe v. Swerda*, 58 Wn. App. 375, 793 P.2d 442, *review denied*, 115 Wn.2d 1025 (1990).

[40]*State v. Calkins*, 50 Wn.2d 716, 718, 314 P.2d 449 (1957).

[41]*Karasek v. Peier*, 22 Wash. 419, 61 P. 33 (1900).

interfered with their unobstructed view. Petitioners did not have an easement for a view.[42] They did not have a restrictive covenant limiting the height or type of structures on adjacent property; nor were there any documents giving them a right to an unobstructed view.[43] Petitioners cannot establish that the District violated the "takings clause" of the Washington Constitution[44] by construction and maintenance of the water tank because no property or property interest of Petitioners was "taken" or "damaged" for a public purpose.[45]

Ownership of property not only includes the right to exclusive possession, but also includes "the right to use the land".[46] Although Petitioners did not own a property interest in their view absent an easement, they could have a property interest in the market value of their property which would entitle them to compensation under the Washington Constitution. "The constitutional provisions must have been intended to protect all the essential elements of ownership which make property valuable."[47] Quoting from a Texas case, this court in *Ackerman v. Port of Seattle* stated:

> "Property in a thing consists not merely in its ownership and possession, but in the unrestricted right of use, enjoyment and disposal. Anything which destroys any of these elements of property, to that extent destroys the property itself. *The substantial value of property lies in its use.* If the right of use be

[42]Clerk's Papers, at 43-49.

[43]Clerk's Papers, at 46-47.

[44]Article 1, section 16 (amendment 9).

[45]"It is established that when a public improvement is made on property adjoining [the property] of one who claims to be damaged by such general factors as . . . change of view . . . and other factors similar to the damages claimed . . . there can be no recovery where there has been no actual taking or severance of . . . claimant's property." *People ex rel. Department of Pub. Works v. Symons*, 54 Cal. 2d 855, 860, 357 P.2d 451, 9 Cal. Rptr. 363 (1960).

[46]*Highline Sch. Dist. 401 v. Port of Seattle*, 87 Wn.2d 6, 11, 548 P.2d 1085 (1976).

[47]*Great Northern Ry. v. State*, 102 Wash. 348, 351, 173 P. 40 (1918).

denied, the value of the property is annihilated and owner-
ship is rendered a barren right."[48]

(Italics ours.)

■■ Property value, or landowners' economic interest in
their property, may be considered an essential element of
ownership.[49] In *Highline Sch. Dist. 401 v. Port of Seattle,
supra,* this court concluded that "an inverse condemnation
action for interference with the use and enjoyment of prop-
erty *accrues when the landowner sustains any measurable
loss of market value . . .*".[50] Although *Highline* involved
inverse condemnation based on aircraft noise and vibration,
the premise that a measurable loss in market value consti-
tutes interference with a landowner's use and enjoyment of
property would be applicable in this case only if the decline
in market value was caused by unlawful governmental
interference.[51]

In this case, based upon appraisal of Petitioners' property,
there is no dispute that there was in fact a measurable loss
in market value after construction of the water tank. David
E. Hunnicutt conducted an appraisal and concluded that
construction of the tank had caused an actual loss in value
to Petitioners' property of at least $30,000.[52] Clearly Petition-
ers have sustained a measurable loss of market value be-
cause of construction of the water tank. Under *Highline*, a
measurable loss in market value "amounts to" an interfer-

---

[48]*Ackerman v. Port of Seattle,* 55 Wn.2d 400, 409, 348 P.2d 664, 77 A.L.R.2d 1344
(1960) (quoting *Spann v. Dallas,* 111 Tex. 350, 355, 235 S.W. 513, 19 A.L.R. 1387
(1921)). *See also State ex rel. Smith v. Superior Court,* 26 Wash. 278, 66 P. 385 (1901);
*Great Northern Ry. v. State,* 102 Wash. 348, 173 P. 40 (1918).

[49]" 'Ownership' in property has long been conceived as a 'complex of rights'
including the right to use and enjoy the thing owned and the 'right to consume, de-
stroy or alienate the thing.' " *Lange v. State,* 86 Wn.2d 585, 590, 547 P.2d 282 (1976)
(quoting P.J. Fitzgerald, *Salmond on Jurisprudence* 246-47 (12th ed. 1966)).

[50](Italics ours.) 87 Wn.2d 6, 15, 548 P.2d 1085 (1976).

[51]*See Petersen v. Port of Seattle,* 94 Wn:2d 479, 485, 618 P.2d 67 (1980).

[52]Clerk's Papers, at 53.

ence with the use and enjoyment of property and Petitioners conceivably could be entitled to compensation for that interference. However, our prior decisions do not lead to the conclusion that loss in market value of Petitioners' property is of itself evidence of governmental interference with the use and enjoyment of property entitling them to compensation.[53] If property, or a substantial portion of that property, is destroyed by the government for a public purpose, the landowner would unquestionably be entitled to compensation under Const. art. 1, § 16 (amend. 9).[54] That section, however, does not "authorize compensation merely for a depreciation in market value of property when caused by a legal act."[55]

In this case, the District complied with all legal requirements for construction of the water storage tank. After completion of the tank, it complied with all conditions under the King County administrative conditional use permit. The District followed all proper procedures to assure that construction and maintenance of the water tank would satisfy all zoning regulations. Construction of the water tank was a permitted legal use.

Petitioners claim they are entitled to compensation because the unaesthetic appearance of the unsightly water tank and the proximity of the tank to their property has

---

[53]The underlying rule in *Lange v. State, supra,* provides that a "condemnee is entitled to be put in the same position monetarily as he would have occupied *had his property not been taken.*" (Italics ours.) *Highline Sch. Dist. 401,* at 14 (citing *Lange v. State,* 86 Wn.2d 585, 547 P.2d 282 (1976)). "A 'taking' has occurred when government conduct interferes with the use and enjoyment of private property, with a subsequent decline in market value." *Lambier v. Kennewick,* 56 Wn. App. 275, 279, 783 P.2d 596 (1989).

[54]*State v. Calkins,* 50 Wn.2d 716, 718, 314 P.2d 449 (1957).

[55]*Aubol v. Tacoma,* 167 Wash. 442, 446, 9 P.2d 780 (1932). "[T]he constitutional guaranty that no private property shall be taken or *damaged* without just compensation having first been paid, does not authorize compensation to appellants for depreciation in the market value of their lands, as the diminution, if any, in value of the land was caused by a legal act, which is in law *damnum absque injuria.*" *Aubol v. Tacoma, supra* at 446.

caused a loss in its market value. This court has not allowed compensation based merely upon proximity of a building or structure.[56]

■ Petitioners rely on *Jacobs v. Seattle*,[57] in which plaintiffs successfully brought an action under article 1, section 16 (amendment 9) of the Washington Constitution claiming their property had been taken and damaged because garbage and refuse were dumped "in close proximity to appellants' home . . .".[58] However, *Jacobs* is distinguishable from this case. In that case there was an actual taking and damaging of appellants' property where the "partly burned matter, which emit[ted] strong, disagreeable and noxious odors . . . cover[ed] appellants' home and yard and surrounding property . . .".[59] In this case, there is no taking or damaging of Petitioners' property. The District is not emitting noxious odors nor maintaining the water storage tank on Petitioners' property. Simply because the water tank is located *near* Petitioners' property does not necessarily mean they are entitled to compensation merely because depreciation in the market value of their property results from the close proximity of the tank.

Petitioners further claim the overbearing presence of the water tank interferes with their use and enjoyment of their property and that they should therefore be compensated for damages. However, we agree with the California court in *People ex rel. Department of Pub. Works v. Symons*,[60] which stated:

> [D]amage for which compensation is to be made is a damage to the property itself, and *does not include a mere infringement of the owner's personal pleasure or enjoyment.* Merely render-

---

[56]*Conger v. Pierce Cy.*, 116 Wash. 27, 198 P. 377, 18 A.L.R. 393 (1921).

[57]93 Wash. 171, 160 P. 299 (1916).

[58]*Jacobs*, at 173.

[59]*Jacobs*, at 173.

[60]54 Cal. 2d 855, 859, 357 P.2d 451, 9 Cal. Rptr. 363 (1960).

ing private property less desirable for certain purposes, or even causing personal annoyance or discomfort in its use, will not constitute the damage contemplated . . . but the property itself must suffer some diminution in substance, or be rendered intrinsically less valuable by reason of the public use.

(Italics ours.)

Petitioners are not entitled in this case to just compensation under the takings clause of the Washington Constitution. They cannot establish a property right or interest in their right to a view; the District has not taken or damaged any property or property interest in Petitioners' land; and "mere infringement" upon Petitioners' personal pleasure and enjoyment of their property is not a sufficient basis for compensation.[61]

## SUMMARY AND CONCLUSIONS

Petitioners have failed to state a cause of action for inverse condemnation based upon a "right to a view". They did not own a property interest in a view. The courts have not recognized a right to a view absent an easement, restrictive covenant or other document creating an affirmative right. None of those exists in this case. Petitioners cannot establish that their property has been taken or damaged under their theory of interference with their "right to a view". Respondent Northeast Lake Washington Sewer and Water District, in full compliance with all legal requirements, constructed the water storage tank on its own property. Construction and maintenance of the tank did not encroach upon the property of Petitioners Arthur E. and Patricia L. Pierce. The water tank is a permitted legal use. Petitioners cannot establish that their property has been taken or damaged by the District constructing and maintaining a permitted legal use on its own property.

We affirm the decision of the Court of Appeals, Division One, dismissing Petitioners' claim for inverse condemnation

---

[61]*Symons*, at 859.

and affirming the judgment of the King County Superior Court.

UTTER, DOLLIVER, DURHAM, GUY, JOHNSON, and MADSEN, JJ., concur.

BRACHTENBACH, J., concurs in the result.