# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| THE GERALDINE A. MANIATIS LIVING TRUST, | No. 53127-5-II |
| Respondent/Cross-Appellant, | |
| v. | |
| MALKIT SINGH and KAUR RANJIT, and the marital community composed thereof, | |
| Appellants/Cross-Respondents. | |
| JAY and ELEANOR KERGER, and KIM TOSCH, | UNPUBLISHED OPINION |
| Respondents/Cross Appellants, | |
| v. | |
| MALKIT SINGH and KAUR RANJIT, and the marital community composed thereof, and the CITY OF TACOMA, a municipal corporation, TYE MINCKLER and KATHERINE MINCKLER, and the marital community composed thereof, | |
| Appellants/Cross-Respondents. | |

MELNICK, J. — The Geraldine Maniatis Living Trust (Trust) and Kim Tosch brought suit against Malkit Singh and Kaur Ranjit (Singh) and Tye and Katherine Minckler for trespass, waste, nuisance, and injunctive relief. The causes of action stem from water flowing downhill from the Singh's and Mincklers' properties onto the Trust's and Tosch's properties. The court found Singh

and the Mincklers liable for intentional and negligent trespass, waste, and nuisance, and awarded injunctive relief.

Singh and the Mincklers appeal, arguing that substantial evidence does not support the court's findings that they caused the water to enter the Trust and Tosch properties or that they acted intentionally. They further argue that the trial court erred in failing to apply the common enemy doctrine, in denying their motion to dismiss, in finding that they had committed waste, in awarding injunctive relief, and in denying their request for fees and costs.

The Trust and Tosch cross-appeal, arguing that the court erred in granting Singh and the Mincklers' untimely motion for reconsideration. They also contend that the court erred by concluding that Singh and the Mincklers were not liable for statutory trespass and denying the resulting award of fees and costs under that statute. The Trust also argues that the court erred in excluding the testimony of its expert witness. Tosch argues that the court erred in finding that the water only drained from the Singh property onto the Trust property, rather than directly onto the Tosch property.

We affirm the trial court's determination of liability for negligent trespass as to Singh but reverse the trial court as to its determination of liability for trespass and waste as to the Mincklers. We affirm on all other issues.

FACTS

In 2011, Singh purchased two adjacent properties in Tacoma (the Singh properties). In 2013, he demolished the existing house on the property with an address of 2307. He then built a new home on each property. In January 2018, Singh sold one home to the Mincklers. Singh kept the other one.

2

The Singh properties slope down to the north and east towards properties owned by the Trust and Tosch. The Trust property is east of and downhill from the Singh properties and the Tosch property is north of and downhill from the Singh and the Trust properties.



Ex. 120.

A wetland, designated by the city of Tacoma in 2008, and its associated buffer span the northern half of both Singh properties. The western portion of the Trust property and the southern portion of the Tosch property are designated as part of the wetland buffer.

A natural spring has existed and flowed continuously on the Singh properties since at least the 1970s. Before Singh's ownership, the spring daylighted in the crawl space of the 2307 home and flowed out from under the corner of the foundation. The spring joined with other water on the surface and flowed downhill into a man-made pool which overflowed. From the pool, the water traveled through a grassy swale into a rock lined ditch, and then onto the Tosch property. The water then entered a drainage system which carried the water to the street and into the city's storm sewers. At no time did the spring water or pond outflow reach the Trust property during the years prior to 2015.

In 2008, the owner of the properties before Singh applied for a wetland development permit from the city of Tacoma. In July 2009, the city issued the permit and the associated proposed wetland mitigation plan. At some point after he purchased the properties, the permit and the associated mitigation plan transferred to Singh's control. The mitigation plan stated that after development, there would be no significant change to the hydrology of the wetlands or to the volume of water leaving the site, and the overflow would continue to discharge onto the Tosch property.

In 2013, Singh razed the original home on the 2307 property and began construction of the new home in May or June of 2015. Sometime after, Singh graded the wetland and buffer areas. The grading did not remove a significant amount of soil but "gently levelled or gently graded" the area and removed the pond that previously collected the spring water. 3 Report of Proceedings (RP) at 465. The general slope of the Singh properties remained the same.

Singh installed a drainage system that included a series of drains that collected water from around the foundation and in the crawl space of the home on the 2307 property. Those drains collected the spring and ground water and directed it to a dispersion trench. The dispersion trench

4

dispersed the collected water on the edge of the wetland. The dispersion trench was located uphill from the Trust property and terminated approximately ten feet from the Trust property line.

In June, James Maniatis began to notice water pooling in the northwest corner of his property. He contacted the city of Tacoma and Singh in July, asking that the water be stopped. In an attempt to address the water flowing onto the Trust property, Singh's contractor placed a hand-dug berm along the Singh/Trust property line in October 2015. The berm failed to stop the water because it was not engineered, built out of the correct materials, or maintained. It was subsequently removed.

On August 27, the city issued a correction notice to Singh for, among other matters, allowing groundwater to discharge onto adjacent property, and for failing to comply with provisions of the wetland permit. On October 5, Singh received a stop work order that required him to address a number of issues including completion of the drainage system required by the wetland mitigation permit, as well as other violations unrelated to the wetland.

In the beginning of October, Tosch first observed wet and muddy ground on her property in the area adjacent to the Trust property. She described the area as "wet, mucky, and muddy." Clerk's Papers (CP) at 687 (Finding of Fact (FF) 39). On October 31, during a heavy rainstorm, water from the Singh properties flooded Tosch's property, going underneath the house, front porch, and pooling in the front yard. Subsequent comparable storms brought similar flooding.

A November 12 letter from the city informed Singh of the violations that precluded him from continuing construction of the homes. The letter listed multiple items that needed to be addressed, including the removal of foundation rock and the installation of crawl space drains per the original approved design, as well as the installation of a rock lined v-ditch to prevent

uncontrolled water affecting neighboring properties. Singh continued to communicate with the city to remedy the outstanding compliance issues.

In an effort to have the city rescind the stop work orders, Singh's wetland consultant responded to the city with a proposed plan to remedy the outstanding compliance issues and to modify the original wetland mitigation plan submitted in 2008. Karla Kluge, the senior environmental specialist from the city of Tacoma overseeing the wetland mitigation, responded, expressed her concerns with the proposal, and denied the request for a minor modification. She concluded that the conditions on the site did not conform to the approved plan and did not provide for the same wetland as was originally proposed.

The city lifted the stop work order on May 9, 2016. Kluge sent a letter to Singh confirming that site conditions met the requirements of the mitigation plan. In the letter Kluge stated, "the applicant is reminded that the pre- and post-development flow to the wetland were analyzed by the applicant and approved by [the] City and these flows must not affect neighboring property owners." Ex. 26, at 4.

Following the May 9 letter, Singh did nothing to stop or abate the water flowing on to the Trust property. In August 2017, Singh completed the development of his properties and completed the work on the wetland pursuant to the mitigation plan. The city confirmed that Singh complied with all permits, including the wetland mitigation permit.

In February 2016, Tosch sued Singh, and approximately seven months later, the Trust sued Singh. The complaints alleged causes of action for both common law and statutory trespass, waste, and nuisance. The Trust sought injunctive relief and $500 in damages, fees, and costs pursuant to RCW 4.24.630. Tosch also sought damages, fees and costs, and an injunction. The court consolidated the cases.

6

In July 2017, Tosch hired a contractor to complete an addition to her home. While digging the foundation, the contractor pumped out significant amounts of water coming from below the surface. Tosch dug up the drain line to create a trench to intercept groundwater flowing onto her property. Prior to this, Tosch took no action to maintain the drain line on her property. The drain line failed because of the accumulation of dirt among the rocks.

From 2015 through trial, water flowed from the Singh properties onto the Trust property. Since at least late 2017, water flowed on the surface of the ground under the fence dividing their properties, several feet south of the north property line, and pooled in the northwest corner of the Trust property. The pool remained throughout the year, including in summer after months of little to no precipitation. During the summer months, a stream of water flowed underneath the fence. The outflow point of the pool went to the Tosch property which lies at a lower elevation. The Maniatises could not use the northwest corner of the Trust property. The areas adjacent to the pool stayed soggy all year round. Tosch suffered some damage to her property because of the water entering through the Trust property onto her property.

In January 2018, a week before the scheduled trial date, Singh conveyed the 2307 property to the Mincklers. The Mincklers knew about the water trespass claims but did not investigate the source of the water entering the Trust property or take steps to stop or divert the water.

Because the Mincklers purchased the 2307 property, the Trust moved to amend its complaint to add them as defendants. Tosch did not seek to amend to add the Mincklers. On February 2, 2018, the court granted the Trust's motion to amend and continued the trial date to

August 2018.[1]  The court's order closed discovery to all parties, except the Mincklers, after the date of the order.

Prior to trial, Singh moved to exclude testimony of the Trust's expert, Edward McCarthy, a licensed engineering geologist and hydrologist, arguing that the Trust failed to properly disclose him.  The court denied the motion but stated that McCarthy's reports or new opinions expressed after February 2 would be excluded.  The Trust moved to exclude the testimony of Singh's expert Frank Fiedler IV, arguing that Singh failed to properly disclose him.  The court allowed Fiedler to testify.[2]

The case proceeded to a bench trial.  Kluge testified several times that Singh did not have a permit to regrade the wetland.  She admitted that the original 2009 development permit allowed Singh to remove the original pond that collected the spring water.

McCarthy testified about his opinions about the hydrology on the Singh properties.  He considered and rejected other potential causes of a sudden increased drainage besides the construction on the Singh properties, including a new utility line, leaking irrigation system, a septic system, or other construction upstream.

When asked what conclusions he drew about where the water goes from the dispersion trench, he opined:

> [T]he purpose of the trench is to disperse the water evenly over the surface of the ground down gradient . . . [but] if there's any point in the topography that would cause that water to concentrate, then the water's going to go that direction.
> So in my opinion, there had been changes in the topography within the wetland with all the activity that's occurred on the site, and that water has been

---

[1] It is unclear from the record whether the court added the Mincklers as defendants as to both the Trust and Tosch or only as to the Trust.

[2] The court admitted a video deposition by Bradley Biggerstaff, Singh's geotechnical expert. Neither the video nor a transcript of the testimony is in the appellate record.

8

diverted from its original outlet, . . . a rock swale, but now a significant outlet is in the—what would be the northeast corner of the Singh property, which happens to discharge to the northwest corner of the [Trust] property. And that's—in my opinion, that's indisputable because I've seen it coming down that direction.

2 RP at 322-23

When asked if a properly functioning drain line on the Tosch property would have an effect on the water flowing to the Trust property, McCarthy opined that it likely would not. He explained that the outlet of the wetland had been altered by activity on the Singh property and the surface water flow path had become more defined to the northeast. Fixing a drain down gradient of the Trust property would not change the grades on the Singh property, which was diverting the water over to the Trust property.

McCarthy also testified about a drainage system that he believed would solve the water problem. Fiedler also testified about possible solutions.

After the Trust and Tosch rested their case, Singh and the Mincklers moved to dismiss under CR 41(b)(3), arguing that the Trust and Tosch failed to prove their case. The court denied the motion.

On December 19, the court issued findings of fact and conclusions of law. The court concluded that Singh could not use the common enemy doctrine, a defense that allows landowners to protect their property from surface water without incurring liability for any resulting damage to neighboring properties.

In addition, the court found Singh liable for intentional trespass. The court determined that Singh's intentional regrading, excavating, installation of the drainage system and installation of a berm directed the water onto the Trust property and eventually onto the Tosch property, resulting in an ongoing trespass.

9

The court also determined that "the drainage system on the Singh Properties constitutes an ongoing waste" to the Trust and Tosch properties. CP at 691 (Conclusion of Law (CL) 7). It is unclear whether the court meant common law waste, or statutory waste under RCW 4.24.630.

The court also found Singh and the Mincklers liable for statutory trespass. RCW 4.24.630. The court decided that Singh "wrongfully caused trespass" by "intentionally and unreasonably commit[ing] acts while knowing they did not have the authority to do so." CP at 691-92 (CL 8, 9). The Mincklers also "wrongfully caused the trespass" by taking "no action at all to address the issue." CP at 691-92 (CL 8, 10). The court found Singh and the Mincklers liable for negligent trespass and nuisance.

The court awarded the Trust relief under the trespass statute, RCW 4.24.630, which included treble damages, reasonable investigation and litigation costs, and attorney fees. The court awarded Tosch the same relief, minus the damages because Tosch did not show a specific dollar amount for damages. The court also determined that the Trust and Tosch were entitled to injunctive relief that required Singh and the Mincklers to "abate the flow of water from the Singh Properties onto [the Trust] property." CP at 693 (CL 20).

On January 2, Singh and the Mincklers filed a motion for clarification of the findings of fact and conclusions of law. They simultaneously filed a motion for reconsideration, arguing in part that the Trust and Tosch failed to provide evidence of wrongfulness necessary to maintain a cause of action for statutory trespass under RCW 4.24.630.

After briefing and argument, the court issued a letter reversing its finding of liability for statutory trespass pursuant to RCW 4.24.630. The court's letter ruling reasoned that the Trust and Tosch failed to show that Singh and the Mincklers acted wrongfully as required by the statute. The court struck conclusions of law 23 and 24, which removed the reward of relief under RCW

4.24.630. However, the court retained the part of the conclusion of law 24 that reads "The Court is not awarding any damages to Plaintiff Tosch because she has not proven an actual dollar figure for those damages." CP at 1096. The court did not alter any other findings or conclusions.

On March 29, the court entered a consolidated judgment for the Trust and Tosch and permanent injunction. It awarded $500 in damages to the Trust and ordered Singh and the Mincklers "to abate the ongoing flow of water from 2307 and 2315 N. 27th Street . . . through the [Trust] Property at their sole cost and expense." CP at 699. It ordered that the flow of water "shall be stopped as it relates to the [Trust] Property on or before September 15, 2019, unless good cause be shown." CP at 700.

On April 10, Singh filed a motion for fees and costs pursuant to RCW 4.84.270. Included with the motion was a copy of the offer of settlement wherein Singh offered to settle the Trust's claims for trespass, waste, and nuisance in the amount of $16,000. The offer did not include the injunction.

The Trust opposed the motion, arguing that it was untimely, Singh failed to include a cost bill or affidavit required by CR 54(d)(1), and an award of attorney fees would contravene the intent of RCW 4.84.250. The court denied the motion for fees, concluding that the Trust's and Tosch's primary claim was for "an injunction, not necessarily the damages that were caused. And the damages were minimal. If it was about $500, this case would have been resolved a long time ago." RP (Apr. 19, 2019) at 12.

Singh and the Mincklers appeal, and the Trust and Tosch cross-appeal.

ANALYSIS

I.    LEGAL PRINCIPLES

We review a trial court's decision following a bench trial to determine whether the findings are supported by substantial evidence and whether those findings support the conclusions of law. *Herring v. Pelayo*, 198 Wn. App. 828, 832, 397 P.3d 125 (2017). Unchallenged findings of fact are verities on appeal. *Herring*, 198 Wn. App. at 833. We then review the conclusions of law de novo to determine if the findings of fact support the conclusions of law. *Scott's Excavating Vancouver, LLC v. Winlock Props., LLC*, 176 Wn. App. 335, 342, 308 P.3d 791 (2013).

Substantial evidence is a sufficient quantity of evidence to persuade a fair-minded, rational person that the finding is true. *Bering v. SHARE*, 106 Wn.2d 212, 220, 721 P .2d 918 (1986). We defer to the trial court on issues of conflicting evidence, witness credibility, and persuasiveness of the evidence. *Scott's Excavating*, 176 Wn. App. at 342. "We do not substitute our view of the evidence for that of the trial court, and we are not permitted to reweigh the evidence and come to a contrary conclusion where the trial court found the evidence unpersuasive." *Cooke v. Chu-Yun Twu*, 10 Wn. App. 2d 476, 483, 448 P.3d 190 (2019).

There is a presumption in favor of the trial court's findings, and the party claiming error has the burden of showing that a finding of fact is not supported by substantial evidence. *Fisher Props., Inc. v. Arden–Mayfair, Inc.*, 115 Wn.2d 364, 369, 798 P.2d 799 (1990). We treat conclusions of law mislabeled as findings of fact as conclusions of law and review them de novo. *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986).

II.    CHALLENGED FINDINGS OF FACT

Singh challenges numerous findings of fact. Some of them relate to causation. The Trust and Tosch argue that Singh failed to identify the specific findings of fact challenged and that he

failed to adequately support his factual assertions with citations to the record. Singh disagrees, contending he sufficiently identified the findings he challenges.

RAP 10.3(a)(4) requires a separate concise statement of each error a party contends the trial court made, together with the issues pertaining to the assignments of error. However, a failure to assign error will not preclude a consideration of the merits if it is "reasonably clear from the arguments in the brief, the opposing party has not been prejudiced, and this court has not been overly inconvenienced." *State v. Yokley*, 91 Wn. App. 773, 777 n.6, 959 P.2d 694 (1998).

RAP 10.3(a)(6) requires an appellant to present argument to the reviewing court as to why specific findings of fact are in error and to support those arguments with citation to relevant portions of the record. RAP 10.4(f) provides that references to the record should designate the page and part of the record which supports each factual statement contained in the statement of the case and in the argument. We are not required to search the record for support for a party's argument. *In re Estate of Lint*, 135 Wn.2d 518, 532, 957 P.2d 755 (1998); RAP 10.3(a)(6).[3]

Singh does not assign error to specific findings of fact in his opening brief, but he does in his reply brief. Singh's co-appellants, the Mincklers, specifically assign error to multiple findings of fact, including those challenged by Singh in his reply brief. Because we are not overly inconvenienced and the opposing party is not prejudiced because it is reasonably clear from the briefing what findings of fact are challenged, we review the issues. *Yokley*, 91 Wn. App. at 777 n.6.

In so doing, we have independently reviewed the record to determine if substantial evidence exists to support the challenged findings. We conclude that all of the challenged findings

---

[3] Singh, the Mincklers, and Tosch all fail to support many of their factual assertions with citations to the record. The lack of citation is not significant enough to preclude consideration of the merits, but we do not consider factual assertions not supported by citation to the record.

are either supported by substantial evidence or, where they are not, they are irrelevant to either the decision of the trial court or our decision.[4]

III.    COMMON ENEMY DOCTRINE

Singh and the Mincklers argue that the court erred in failing to apply the common enemy doctrine.  They contend that the water emanating from the spring is surface water, and none of the exceptions to the doctrine applies.  Singh and the Mincklers argue that there is no evidence to support the court's finding that, "During the construction, Defendants Singh drastically altered the natural watercourse that has historically been in place on the Singh properties."  CP at 688 (FF 49).  We conclude that the court did not err in finding that the common enemy doctrine does not absolve Singh of liability.

Since 1896, the common enemy doctrine has operated as a defense to liability for damage caused by the diversion of surface water.  *Cass v. Dicks*, 14 Wash. 75, 78-79, 44 P. 113 (1896).  Unless one of three exceptions apply, the "doctrine allows landowners to dispose of unwanted surface water in any way they see fit, without liability for resulting damage to [neighboring properties]."  *Currens v. Sleek*, 138 Wn.2d 858, 861, 983 P.2d 626 (1999).  If any one of the exceptions applies, the landowner cannot be absolved of liability.

Surface waters are ordinarily those vagrant or diffused waters produced by rain, melting snow, or springs.  *Currens*, 138 Wn.2d at 861; *see also Alexander v. Muenscher*, 7 Wn.2d 557,

---

[4] In addition, as to Singh's argument that there are insufficient findings of fact and insufficient evidence to support a conclusion that he caused the water to enter the Trust property, we disagree. He essentially argues that because the court did not pinpoint one specific action as the cause, for example grading or excavating land or installing the drainage system, that means no cause was established or proven.  However, Singh's argument assumes that there can only be one action that causes an effect.  The testimony by McCarthy and other witnesses makes clear that the hydrological system is a delicate one that is subject to change with individual acts alone as well as several acts in combination.  Singh's argument fails.

559, 110 P.2d 625 (1941). "The chief characteristic of surface water is its inability to maintain its identity and existence as a body of water. It is thus distinguished from water flowing in its natural course." *Halverson v. Skagit County*, 139 Wn.2d 1, 15, 983 P.2d 643 (1999). Water meeting the definition of surface water "'is regarded as an outlaw and a common enemy against which anyone may defend himself, even though by so doing injury may result to others.'" *Hoover v. Warner*, 189 Wn. App. 509, 524, 358 P.3d 1174 (2015) (internal quotation marks omitted) (quoting *Currens*, 138 Wn.2d at 861). Washington also applies the principles of the doctrine to groundwater. *Wilkening v. State*, 54 Wn.2d 692, 698, 344 P.2d 204 (1959).

The water at issue in this case is surface water. Its origin is a spring that is collected by the drainage system. The definition of surface water specifically contemplates water produced by springs. *Muenscher*, 7 Wn.2d at 559. It could also be considered groundwater because it does not reach the surface until it leaves the dispersion trench. *Wilkening*, 54 Wn.2d at 698. The common enemy doctrine applies unless one of the three recognized exceptions applies. Each is analyzed below.

The first exception provides that a landowner may not inhibit the flow of a watercourse or natural drainway. *Currens*, 138 Wn.2d at 862. A natural watercourse is defined as a channel, having a bed, banks or sides, and a current in which waters, with some regularity, run in a certain direction. *King County v. Boeing Co.*, 62 Wn.2d 545, 550, 384 P.2d 122 (1963). "A natural drain is that course, formed by nature, which waters naturally and normally follow in draining from higher to lower lands." *Boeing Co.*, 62 Wn.2d at 550.

Whether an artificially altered watercourse has become the 'natural' channel because of its antiquity or the longtime acceptance by property owners living adjacent to the watercourse is a

question to be decided by the court as a matter of law. *Matheson v. Ward*, 24 Wash. 407, 411-12, 64 P. 520 (1901).

The water in this case should not be considered a natural watercourse because it does not have a bed, banks, or sides.[5] Prior to the installation of the current drainage system, the water was channeled into a pool and rock swale system. That system could conceivably be considered a watercourse because the water had collected into one body. However, it did not become the "natural" channel because of its antiquity. It was not a watercourse to begin with, it was surface or ground water artificially channeled. The first exception to the common enemy defense does not apply.

The second exception "prevents landowners from collecting water and channeling it onto their neighbors' land." *Hoover*, 189 Wn. App. at 524. It provides that surface waters may not be artificially collected and discharged on adjoining lands in quantities greater than or in a manner different from the natural flow thereof. *Currens*, 138 Wn.2d at 862; *see also Colella v. King County*, 72 Wn.2d 386, 390, 433 P.2d 154 (1967). As part of this exception, a landowner cannot create an unnatural conduit, but the landowner can direct diffuse surface waters into pre-existing natural waterways and drainways. *Currens*, 138 Wn.2d at 862. Here, the findings show that Singh channelized the flow of water. Singh captured it in a curtain drain and deposited it directly adjacent to and uphill from the Trust property. Therefore, the second exception to the common enemy defense applies to Singh.

The third exception states that "landowners who alter the flow of surface water on their property must exercise their rights with due care by acting in good faith and by avoiding

---

[5] Therefore, the portion of finding of fact 49 that characterizes the water as a natural watercourse is not supported by substantial evidence.

unnecessary damage to the property of others." *Currens*, 138 Wn.2d at 865. The due care exception requires the defendant "limit any harm caused by changes in the flow to that which is reasonably necessary." *Pruitt v. Douglas County*, 116 Wn. App. 547, 557, 66 P.3d 1111 (2003). "[T]he due care exception requires the court to look only to whether the landowner has exercised due care in improving his or her land, i.e., whether the method employed by the landowner minimized any unnecessary impacts upon adjacent land." *Currens*, 138 Wn.2d at 866.

Here, Singh failed to exercise due care. Although he hired engineers to assist in the design of the drainage system as part of the wetland mitigation plan, the realities of what happened on the property during construction demonstrate a failure to minimize unnecessary impacts. Singh was informed of multiple violations by the city regarding his failure to implement the mitigation plan he agreed to complete. The stop work order was issued in part because he had failed to "[c]omplete drain system required by wetland permit" in early October. Ex. 42. By mid-November, he had to be told again that he needed to complete the drain system by "install[ing] the crawl space drains per the original approved design" and "install[ing] a rock lined V-ditch" to "prevent uncontrolled water affecting neighboring properties." Ex. 15, at 133-34. Although failure to comply with permit conditions does not automatically mean he did not exercise due care, it does demonstrate a lack of intent to minimize unnecessary impacts.

Finally, between being authorized to continue construction in May 2016 and finishing the development of his properties and wetland mitigation plan in August 2017, Singh did not take any action to stop the flow of water onto to the Trust property. We determine that Singh failed to exercise due care in the process of developing his property. Therefore, the third exception to the common enemy defense applies to Singh.

17

In sum, the court erred in concluding that the first exception to the common enemy defense applied.[6] However, it did not err in concluding that the second and third exceptions apply. Therefore, Singh is not entitled to the common enemy defense.

IV.    TRESPASS

A.    Negligent Trespass

Singh and the Minklers argue that because the findings of fact showing causation are not supported by substantial evidence, the court erred in finding them liable for trespass. We disagree.

"'Negligent trespass' requires proof of negligence (duty, breach, injury, and proximate cause)." *Pruitt*, 116 Wn. App. at 554.

The trial court concluded that the "water flowing from the Singh Properties through the drainage system constitutes a trespass" onto the Trust and Tosch properties. CP at 691 (CL 6). Because we have already concluded that the court did not err in finding causation, the court did not err in finding liability for trespass. Singh and the Minklers do not argue to the contrary.

B.    Intentional Trespass

Singh argues that the court erred in concluding that that he committed an intentional trespass because no evidence supports a finding that he intended to trespass or knew his actions would result in trespass. The Trust does not respond to this argument. We agree with Singh

To establish intentional trespass, "a plaintiff must show (1) an invasion of property affecting an interest in exclusive possession; (2) an intentional act; (3) reasonable foreseeability that the act would disturb the plaintiff's possessory interest; and (4) actual and substantial damages." *Wallace v. Lewis County*, 134 Wn. App. 1, 15, 137 P.3d 101 (2006).

---

[6] Therefore, the portion of finding of fact 50 and conclusion of law 3 that relate to the natural watercourse exception to the common enemy defense are not supported.

A cause of action for a continuing intentional trespass arises when an intrusive substance remains on a person's land, causes actual and substantial harm to that person's property, and is abatable. *Bradley v. Am. Smelting & Refining Co.*, 104 Wn.2d 677, 693, 709 P.2d 782 (1985). The concept of trespass includes trespass by water. *Grundy v. Brack Fam. Tr.*, 151 Wn. App. 557, 566, 213 P.3d 619 (2009). The "trespasser" is under a continuing duty to remove the intrusive substance or condition. *Wallace*, 134 Wn. App. at 15.

An intentional act requires proof that the actor "'desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.'" *Seal v. Naches–Selah Irrig. Dist.*, 51 Wn. App. 1, 5, 751 P.2d 873 (1988) (internal quotation marks omitted) (quoting *Bradley*, 104 Wn.2d at 682). "At a minimum, this requires proof that the actor has knowledge that the consequences are certain, or substantially certain, to result from his conduct and proceeds in spite of this knowledge." *Jackass Mt. Ranch, Inc. v. S. Columbia Basin Irrig. Dist.*, 175 Wn. App. 374, 401, 305 P.3d 1108 (2013).

The intentional acts here involve construction. Singh intentionally graded the wetland and he intentionally excavated and built the drainage system. Singh became aware that water began appearing on the Trust property in August 2015. Even if Singh did not know at that time that his construction caused water to pool on the Trust property, he had that knowledge by October 2015, when his contractor placed a berm against the fence line to attempt to divert the flow of water to the Trust property.

However, there is no evidence that Singh either desired to cause water to enter the Trust or Tosch property or believed that the consequences were substantially certain to result. Although Singh clearly failed to follow some of the requirements set out in his wetland mitigation plan, he ultimately completed the mitigation work. There is no indication that he engaged in construction

activity believing that water flowing onto the Trust property was substantially certain to result. In fact, the goal was to have the water continue to flow onto the Tosch property. We conclude that the trial court erred in determining that Singh committed intentional trespass.

V.    WASTE

Singh argues that the court erred in concluding that the defendants were liable for waste because waste requires that he physically enter on the land and there is no evidence that he came onto Tosch's or the Trust's land and caused injury.

RCW 4.24.630, in addition to creating a cause of action for "statutory trespass," has also been referred to as "the waste statute." *See Porter v. Kirkendoll*, 194 Wn.2d 194, 211, 449 P.3d 627 (2019) ("Porter and Zimmer seek relief under the waste statute, RCW 4.24.630"). It states in relevant part: "Every person who goes onto the land of another and who . . . wrongfully causes waste or injury to the land, . . . is liable to the injured party for treble the amount of the damages caused by the removal, waste, or injury." RCW 4.24.630. Whether Singh is liable under RCW 4.24.630 is discussed below.[7]

VI.   THE MINCKLERS

The Mincklers argue that there is no evidence to support a finding of liability against them for any of the asserted causes of action.

The Trust and Tosch have provided neither legal argument nor citations to authority to establish liability by the Mincklers. They merely state that the evidence "established the Defendants' unpermitted development caused the flooding on the Trust Property," and summarily assert that "Defendants Minckler knew of the offending groundwater and drainage issue but never

---

[7] On appeal, neither party argues that common law waste is applicable here so we do not discuss it.

took steps to abate the flow." Br. of Resp't Trust at 49-50. We conclude that the court erred in finding the Mincklers liable.

VII.    MOTION TO DISMISS

Singh and Minckler argue that the court erred in denying their motion to dismiss because the Trust and Tosch failed to present evidence of either causation or intent; therefore, they failed to meet their burden of proof before resting their case. We disagree.

At the end of the Trust's and Tosch's case in chief, Singh moved to dismiss pursuant to CR 41. CR 41(b)(3), reads in part:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

Dismissal is proper "if there is no evidence, or reasonable inferences therefrom, that would support a verdict for the plaintiff." *Willis v. Simpson Inv. Co.*, 79 Wn. App. 405, 410, 902 P.2d 1263 (1995). We review a trial court's decision on a motion to dismiss for manifest abuse of discretion. *Escude v. King County Pub. Hosp. Dist. No. 2*, 117 Wn. App. 183, 190, 69 P.3d 895 (2003).

We conclude that the Trust and Tosch presented evidence to support a verdict in their favor, thus, the court did not abuse its discretion in denying the motion to dismiss.

VIII.   INJUNCTION

Singh and the Mincklers argue that the court erred in issuing an injunction because the trial court provided inadequate guidance on how they can comply with it and because it is unenforceable. They contend that the injunction is impossible to comply with because abating the flow of water to the Trust property requires that Tosch maintain her drainline and remove the berm

21

that stops the water from flowing to that drain. They also argue that the Trust will continue to experience water until it fills the depression in the yard to allow the water to drain from the property. In addition, they argue that they cannot comply because there is a chance the city will not grant a permit to perform the necessary work. Singh and the Mincklers further argue that because there is no particular action that they are compelled to take, a court cannot consider the necessary factors to determine whether an injunction is proper.

"A suit for an injunction is an equitable proceeding addressed to the sound discretion of the trial court, to be exercised according to the circumstances of each case." *Steury v. Johnson*, 90 Wn. App. 401, 405, 957 P.2d 772 (1998). "Appellate courts must give great weight to the trial court's decision, interfering only if it is based on untenable grounds, is manifestly unreasonable or is arbitrary." *Steury*, 90 Wn. App. at 405.

Remedies other than an injunction may be inadequate where the injury by its nature cannot be compensated by money damages, the damages cannot be ascertained with any degree of certainty, or other remedies would not be efficient because the injury is of a continuing nature. *Kucera v. Dep't of Transp.*, 140 Wn.2d 200, 210, 995 P.2d 63 (2000).

We review a trial court's decision to grant an injunction for abuse of discretion. *Bauman v. Turpen*, 139 Wn. App. 78, 93, 160 P.3d 1050 (2007). A trial court abuses its discretion if its ruling is manifestly unreasonable or it exercises discretion on untenable grounds or for untenable reasons. *Turpen*, 139 Wn. App. at 93. A decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard, or if the facts do not meet the requirements of the correct standard. *Turpen*, 139 Wn. App. at 93. When a trial court orders injunctive relief, there is no abuse of discretion unless no reasonable judge would take the position adopted by the trial court. *Turpen*, 139 Wn. App. at 93.

"'[O]ne who seeks relief by temporary or permanent injunction must show (1) that he has a clear legal or equitable right, (2) that he has a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of are either resulting in or will result in actual and substantial injury to him.'" *Hoover*, 189 Wn. App. at 528-29 (internal quotation marks omitted) (quoting *Kucera*, 140 Wn.2d at 209).

Although a trial court should consider factors such as relative hardship, "they are not essential elements of an action for injunctive relief; the essential elements are necessity and irreparable injury." *DeLong v. Parmelee*, 157 Wn. App. 119, 150, 236 P.3d 936 (2010). A "balancing the equities or relative hardships" analysis only applies to "innocent defendants who proceed without knowledge or warning that their activity encroaches upon another's rights." *Turpen*, 139 Wn. App. at 96.

The injunction ordered the Mincklers and Singh "to abate the ongoing flow of water from 2307 and 2315 N. 27th Street . . . through the [Trust] Property at their sole cost and expense." CP at 699. It ordered that the flow of water "shall be stopped as it relates to the [Trust] Property on or before September 15, 2019, unless good cause be shown." CP at 700.

Singh does not argue that the Trust and Tosch are not entitled to an injunction, so we do not address those factors. We conclude that Singh's impossibility and "cannot comply" arguments fail. Both McCarthy and Singh's own expert, Fiedler, testified about practical solutions to the problem. There is no evidence to suggest that the city would not issue a permit. The trial court did not abuse its discretion in issuing the injunction.

IX. SINGH CLAIM FOR ATTORNEY FEES

Singh argues that the court erred in denying his motion for fees and costs under RCW 4.84.250. He asserts that he is entitled to attorney fees because the Trust did not accept his offer

23

of settlement, and the Trust recovered less than the proposed settlement amount at trial. The Mincklers join in this argument.

Trust argues that trial court correctly denied the request for fees under RCW 4.84.270 for several reasons. First, he contends that the motion was untimely because CR 54 requires a party to file a motion for attorney fees and expenses within ten days after entry of judgment, and Singh filed the motion 12 days after entry of judgment. The Trust also asserts that RCW 4.84.270 only applies to actions for damages and is not applicable here because the Trust primarily sought injunctive relief. We disagree with the Trust that the motion was untimely; however, we conclude that Singh is not entitled to attorney fees under RCW 4.84.270.

A.      Timeliness

CR 54(d)(2) requires a party seeking attorney fees and expenses to file a claim by motion "no later than 10 days after entry of judgment." CR 6(b) provides that upon a motion by a party, the court may enlarge the time to file that motion. However, a failure to file a motion to enlarge time within 10 days after entry of judgment does not waive a party's right to recover attorney fees and costs absent a showing of prejudice by the party opposing the award. *O'Neill v. City of Shoreline*, 183 Wn. App. 15, 23, 332 P.3d 1099 (2014).[8]

"A party establishes prejudice by showing 'a lack of actual notice, a lack of time to prepare for the motion, and no opportunity to provide countervailing oral argument and submit case

---

[8] In *Groucher v. J.R. Simplot Co*., 104 Wn.2d 662, 665, 709 P.2d 774 (1985), the Washington Supreme Court's decided that a trial court did not err in considering an untimely motion under CR6(d), because that rule "'is not jurisdictional, and that reversal for failure to comply requires a showing of prejudice.'" (Quoting *Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 364, 617 P.2d 704 (1980).) In *O'Niell*, 183 Wn. App. at 23, the court determined that there is no meaningful distinction between the time requirements of CR 6(d) and CR 54(d)(2), and absent a showing of prejudice by the party opposing the motion, a court does not err in considering a motion filed past the 10-day deadline.

authority.'" *O'Neill*, 183 Wn. App. at 22 (quoting *Zimny v. Lovric*, 59 Wn. App. 737, 740, 801 P.2d 259 (1990)).

Singh filed a motion for attorney fees 12 days after the court entered the judgment. The Trust responded, arguing in part that the motion for fees was untimely. The court entered an order denying the motion for fees, and that order states, "CR 54 objection is denied." CP at 795. The court denied the motion because it determined that Singh was not entitled to fees under the statute, not because the motion was untimely.

Singh did not file a motion to enlarge the deadline, however, the court considered the motion anyway. Singh informed the Trust that he would seek attorney fees under RCW 4.84.250 if the Trust rejected the offer of settlement. There was no lack of time to prepare for the motion, and the Trust had, and took, the opportunity to respond both in briefing and in argument before the court. The Trust failed to show prejudice. *O'Neill*, 183 Wn. App. at 22. Therefore, the court did not err in considering Singh's motion for fees 12 days after entry of judgment.

B.      Attorney Fees under RCW 4.84.250

RCW 4.84.250 provides that in any action for damages where the amount pleaded by the prevailing party is $10,000 or less, a reasonable attorney fees shall be taxed as a part of the costs awarded to the prevailing party. A defendant, or the party resisting relief, is deemed the "prevailing party" for the purposes of RCW 4.84.250 if the plaintiff recovers either nothing or a sum the same or less than the amount offered in settlement. RCW 4.84.270

The purpose of RCW 4.84.250 is "to encourage out-of-court settlements and to penalize parties who unjustifiably bring or resist small claims." *Beckmann v. Spokane Transit Auth.*, 107 Wn.2d 785, 788, 733 P.2d 960 (1987). Award of fees under RCW 4.84.250 is mandatory if the

conditions of the statute are met. *Kingston Lumber Supply Co. v. High Tech Dev. Inc.*, 52 Wn. App. 864, 867, 765 P.2d 27 (1988).

Prior to trial, Singh offered to settle the Trust's claims for trespass, waste, and nuisance in the amount of $16,000. The offer did not include the injunction. The Trust rejected the offer. The court awarded the Trust $500 in damages.

The presence of a claim for an injunction in addition to damages does not take the lawsuit outside of RCW 4.84.250. *See Hanson v. Estell*, 100 Wn. App. 281, 288, 997 P.2d 426 (2000). However, the purpose of the statute, to encourage out-of-court settlements and to penalize parties that unjustifiably bring or resist small claims, will not be served by deeming Singh the prevailing party.

Although the Trust recovered less in monetary damages than was offered in the settlement, the Trust's claim was primarily for an injunction, not monetary damages. Singh's settlement offer did not include the claim for injunctive relief, the nonmonetary issues. *See Cooke*, 10 Wn. App. 2d at 482-83. Singh is not the prevailing party. The court did not err in denying his motion for attorney fees.

## CROSS-APPEALS

I. TRUST

A. Motion for Reconsideration

The Trust argues that the court erred in granting Singh's motion for reconsideration because he filed it 12 days after the court entered its findings of fact and conclusions of law and was therefore untimely. We disagree.

CR 59(b) provides that, "A motion for a new trial or for reconsideration shall be filed not later than 10 days after the entry of the judgment, order, or other decision." A trial court may not

extend the time period for filing a motion for reconsideration under CR 59(b); CR 6(b)(2); *Schaefco, Inc. v. Columbia River Gorge Comm'n*, 121 Wn.2d 366, 367-68, 849 P.2d 1225 (1993).

Additionally, CR 52(b) provides that "Upon motion of a party filed not later than 10 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly. The motion may be made with a motion for a new trial pursuant to rule 59."

The rules do not define "other decision." *In re Marriage of Tahat*, 182 Wn. App. 655, 672, 334 P.3d 1131 (2014), determined that the meaning of "other decisions" is limited "to court actions similar in nature to judgments and orders." Other decisions "could include 'parenting plans,' 'decrees,' and 'injunctions.'" *Tahat*, 182 Wn. App. at 670.

In *Chaffee v. Keller Rohrback LLP*, 200 Wn. App. 66, 75, 401 P.3d 418 (2017), the court addressed whether a motion for reconsideration was untimely under CR 59. The court concluded that an "other decision" must be a determination subject to appeal. *Chaffee*, 200 Wn. App. at 75. In the "context of the rule and the surrounding language," the court concluded that CR 59 requires finality. *Chaffee*, 200 Wn. App at 75. Findings of fact and conclusions of law are not subject to appeal before judgment is entered. Here, Singh's motion was timely.

B.     Statutory Trespass

The Trust argues that the court erred in concluding that Singh was not liable for trespass or waste under RCW 4.24.630. We disagree.

RCW 4.24.630(1) states, in pertinent part,

Every person who goes onto the land of another and who removes timber, crops, minerals, or other similar valuable property from the land, or wrongfully causes waste or injury to the land, or wrongfully injures personal property or improvements to real estate on the land, is liable to the injured party for treble the amount of the damages caused by the removal, waste, or injury.

The plain language of the statute imposes liability only on a "*person* who goes onto the land of another." RCW 4.24.630(1) (emphasis added); *Kave v. McIntosh Ridge Primary Rd. Ass'n*, 198 Wn. App. 812, 824, 394 P.3d 446 (2017); *see also Colwell v. Etzell*, 119 Wn. App. 432, 439, 81 P.3d 895 (2003) ("the statute's premise is that the defendant physically trespasses on the plaintiff's land.").

Although water from Singh's property physically entered the Trust or Tosch properties, Singh did not personally enter them. Therefore, the court did not err by concluding that Singh was not liable for statutory trespass.[9]

C. Exclusion of Testimony

The Trust argues that the court erred by admitting testimony and records of Singh's expert, Fielder, while simultaneously excluding evidence and testimony of McCarthy which was obtained after February 2. It contends that the court failed to engage in the required analysis under *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 933 P.2d 1036 (1997), prior to excluding McCarthy. We disagree.

Admission of evidence lies within a trial court's discretion. *Davis v. Globe Mach. Mfg. Co., Inc.*, 102 Wn.2d 68, 76, 684 P.2d 692 (1984); ER 403. As such, "[a] trial court's refusal to allow testimony is reviewed for [an] abuse of discretion." *Leda v. Whisnand*, 150 Wn. App. 69, 79 n.2, 207 P.3d 468 (2009). "'A trial court abuses its discretion when its order is manifestly unreasonable or based on untenable grounds.'" *Leda*, 150 Wn. App. at 79 n.2 (quoting *Wash. State Phys. Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 399, 858 P.2d 1054 (1993)).

A trial court's erroneous refusal to admit evidence will only merit reversal if the error prejudiced the party seeking the admission; that is, "within reasonable probabilities, the outcome

---

[9] Any argument that treble damages should be awarded under this statute is also without merit.

of the trial would have been materially affected had the error not occurred." *Saldivar v. Momah*, 145 Wn. App. 365, 401, 186 P.3d 1117 (2008).

The Trust argues that the court, prior to excluding McCarthy's testimony, should have conducted a *Burnet* analysis, which requires the court to consider on the record (1) whether a lesser sanction than excluding testimony would suffice, (2) whether the discovery violation at issue was willful or deliberate, and (3) whether the violation substantially prejudiced the opposing party's ability to prepare for trial. 131 Wn.2d at 494. However, as *Burnet* and its progeny make clear, that analysis only applies when the court excludes a late disclosed witness as a discovery sanction.

Here, the court did not exclude McCarthy's testimony because he was disclosed late. The court limited his testimony to opinions formed and materials produced before a discovery cutoff of February 2. Additionally, Fiedler only testified about meetings he had with the city regarding possible solutions to the water problem. Those meetings and the documents produced as exhibits from those meetings pre-date the February 2 cutoff that was similarly applied to McCarthy.

The trial court did not abuse its discretion here because it did not apply unequal standards to the parties. The record indicates that the time period of Fiedler's testimony and exhibits also pre-date the February 2 discovery cutoff. The court was not required to engage in a *Burnet* analysis because it did not exclude the testimony as a discovery sanction. The Trust has not shown that the decision to exclude McCarthy was manifestly unreasonable.

Additionally, even if the court's decision to limit evidence or testimony by McCarthy was erroneous, the Trust fails to explain what McCarthy would have testified to. It merely makes an assertion that the testimony "directly relates to whether Singh acted intentionally and unreasonably." Reply Br. of Resp't Trust at 19. It also does not explain how that testimony would

29

have affected the outcome of the case. *Saldivar*, 145 Wn. App. at 401. We determine that the trial court did not abuse its discretion in limiting McCarthy's testimony.

II. TOSCH

Tosch challenges the court's "deficient findings and conclusions regarding the direction of the wetland water outflow." Br. of Resp't Tosch at 8. She argues that the trial court erred in determining that the wetland ceased discharging water onto the Tosch property and instead commenced discharging water only onto the Trust property, from where the water then discharged onto the Tosch property. We disagree.

Tosch appears to have misunderstood the court's decision. The court did not find that there was no water flowing to the Tosch property. The court only limited her recovery to damages and injunction related to the water flowing from the Trust property to hers because the water historically entered the Tosch property from the north outlet on the Singh properties. It was therefore not a trespass or waste for Singh to continue to do so. In fact, Singh's mitigation plan was supposed to result in all water flowing to Tosch's drain line, as it had always done.

ATTORNEY FEES ON APPEAL

The Trust argues that we should award reasonable attorney fees pursuant to RAP 18.1 under RCW 4.24.630(1).

"A party may recover attorney fees and costs on appeal when granted by applicable law." *Oregon Mut. Ins. Co. v. Barton*, 109 Wn. App. 405, 418, 36 P.3d 1065 (2001); RAP 18.1(a).

Because the Trust is not entitled to fees under RCW 4.24.630, it is not entitled to attorney fees under RAP 18.1.

CONCLUSION

We affirm the trial court's determination of liability for negligent trespass as to Singh but reverse the trial court as to its determination of liability for trespass and waste as to the Mincklers. We affirm the remainder.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Maxa, P.J.

_____
Cruser, J.